UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

TAMEL DIXON,

                        Plaintiff,

        -against-

CITY OF NEW YORK, CORIZON HEALTH, INC., CORIZON, INC., NEW YORK CITY DEPARTMENT OF CORRECTION COMMISSIONER JOSEPH PONTE, individually and in his official capacity, CORRECTION OFFICER ALVIN GALLARDO, Shield No. 17567, individually and in his official capacity, CORRECTION OFFICER KIRK HYLTON, Shield No. 10776, individually and in his official capacity, CORRECTION OFFICER "JOHN" POWELL, individually and in his official capacity, CORRECTION OFFICER RICHARD HILL, Shield No. 17380, individually and in his official capacity, CORRECTION OFFICER DWAYNE COCKBURN, Shield No. 17563, individually and in his official capacity, CORRECTION OFFICER RICHARD AGBAI, individually and in his official capacity, CAPTAIN JERZY SKUPIEN, Shield No. 408, individually and in his official capacity, CAPTAIN ROD MARCEL, Shield No. 381, individually and in his official capacity, CAPTAIN BUDNARINE BEHARI, individually and in his official capacity, CORRECTION OFFICER LAMEEN BARNES, Shield No. 15406, individually and in his official capacity, CORRECTION OFFICER JAMIE ROMAN, Shield No. 18735, individually and in his official capacity, CORRECTION OFFICER ANDRE PHILIP, Shield No. 18518, individually and in his official capacity, CORRECTION OFFICER "JOHN" CAULDWELL, individually and in his official capacity, CORRECTION OFFICER NIKOLAS SPIRIS, Shield No. 18445, individually and in his official capacity, CORRECTION OFFICER CARLOS DIAZ, Shield No. 17622, individually and in his official capacity, CORRECTION OFFICER JOHNNIEMAY WITCHER, Shield No. 9411, individually and in his official capacity, CORRECTION OFFICER KEISHA JOHNSON, individually and in her official capacity, CORRECTION OFFICER TERRENCE DIXON, individually and in his official capacity, CAPTAIN "JOHN DOE", Shield No. 1510, individually and in his official

Docket No. 15 CV 850 (AT)(AP)

**AMENDED VERIFIED COMPLAINT**

Jury Trial Demanded

capacity, CORRECTION OFFICER CORRECTION
OFFICERS JOHN DOE 1-20, individually and in their
official capacity, and JOHN AND JANE DOE 1-20,
individually and in their official capacity,

<div align="center">Defendants.</div>

----------------------------------------------------------------------X

Plaintiff, TAMEL DIXON, by his attorneys, HELD & HINES, LLP, as and for his

Amended Verified Complaint, hereinafter states and alleges as follows upon information and

belief:

<div align="center">

**<u>PRELIMINARY STATEMENT</u>**

</div>

1.     Plaintiff commences this action seeking compensatory damages and attorney's

fees against all defendants, together with punitive damages against the non-municipal

defendants, for repeated violations of his civil, statutory and common law rights by the

defendants, while acting under color of law, as said rights are secured by the Constitution of the

United States of America, 42 U.S.C. §1983 *et seq.*

2.     Plaintiff also asserts supplemental state law claims against Corizon Health, Inc.

and Corizon, Inc. (collectively "Corizon"), their agents, servants and employees, as well as the

individual defendants acting in their individual capacities, for violations of his rights secured by

the Constitution of the State of New York, as well as Article 15 of the New York State Executive

Law ("NYS Human Rights Law"), Section 40 *et seq.* of the New York State Civil Rights Law

(the "NYS Civil Rights Law"), and Sections 8-107 *et seq.*, 8-502 *et seq.* and 8-603 *et seq.* of the

Administrative Code of the City of New York (the "City Human Rights Law"), Section 500-b of

the New York State Correction Law, ("Correction Law"), as well as common law claims of

assault, battery, fraud, conspiracy, negligent hiring, training and retention, intentional infliction

of emotional distress, negligent infliction of emotional distress, neglect and failure to provide

medical treatment, general negligence, and failure to protect.

3.　　The incidents alleged herein establish a pattern and practice of wanton and uninhibited brutality against Plaintiff while he was confined to the custody, control and care of the New York City Department of Correction ("DOC"), their agents, servants and employees, between February 2012 and April 2013. To wit, Plaintiff was the victim of at least nine (9) excessive uses of force by the defendant correction officers and twelve (12) attacks by other inmates at the direction and/or instigation of the defendant correction officers.

## JURISDICTION AND VENUE

4.　　This action is brought pursuant to 42 U.S.C. §§1983, 1985, 1986 and 1988; the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America; the Constitution of the State of New York; the Correction Law of the State of New York; the NYS Human Rights Law; the NYS Civil Rights Law; the New York City Human Rights Law; and the Charter and Administrative Code of the City of New York.

5.　　Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343(a)(3) and (4) and the aforesaid statutory and constitutional provisions.

6.　　Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over claims which arise under the relevant provisions of New York state law.

7.　　Plaintiff's claim for attorneys' fees and costs is predicated upon 42 U.S.C. §1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. §1983, as well as N.Y. C.P.L.R. Art. 86 and City Human Rights Law §8-502(f) for pendent claims arising under New York state and local law.

8.　　Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to this claim occurred within Bronx

County, New York, which is within this judicial district.

## PARTIES

9.      At all times mentioned herein, the plaintiff was and remains a resident of the State of New York.

10.     Upon information and belief, and at all times mentioned herein, the defendant, City of New York (hereinafter referred to as the "City"), was and remains a body corporate and politic, constituting a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.

11.     Upon information and belief, and at all times mentioned herein, the City maintains the New York City Department of Health and Mental Hygiene (hereinafter referred to as the "DOHMH"), pursuant to law.

12.     Upon information and belief, and at all times mentioned herein, DOHMH was and remains under the supervision and control of the City.

13.     Upon information and belief, and at all times mentioned herein, the City maintains Correctional Health Services (hereinafter referred to as the "CHS"), pursuant to law.

14.     Upon information and belief, and at all times mentioned herein, CHS was and remains under the supervision and control of the City.

15.     Upon information and belief, and at all times mentioned herein, DOHMH maintains CHS.

16.     Upon information and belief, and at all times mentioned herein, CHS was and remains under the supervision and control of DOHMH.

17.     Upon information and belief, and at all times mentioned herein, CHS was and remains an affiliate to and/or part of DOHMH.

18.     Upon information and belief, and at all times mentioned herein, the City maintains the City of New York Department of Correction (hereinafter referred to as the "DOC"), pursuant to law.

19.     Upon information and belief, and at all times mentioned herein, DOC was and remains under the supervision and control of the City.

20.     Corizon Health, Inc. is a foreign corporation organized and existing by virtue of the laws of the State of Delaware, with its principal executive office in Tennessee. Corizon Health, Inc. is authorized to and does transact business in the State of New York.

21.     Corizon, Inc. is a foreign corporation organized and existing by virtue of the laws of the State of Missouri, with its principal executive office in Tennessee. Corizon, Inc. is authorized to and does transact business in the State of New York.

22.     At all times mentioned herein, Dora B. Schriro was the appointed Commissioner of the City of New York Department of Correction. Commissioner Joseph Ponte (hereinafter referred to as the "DOC Commissioner" or "Commissioner Ponte") is named herein in his official capacity pursuant to Fed. R. Civ. P. 25.

23.     Pursuant to Section 500-c, subd. 2, of the New York State Correction Law, the DOC Commissioner has custody of the correctional facilities within the City of New York, including but not limited to the correctional facilities where the subject incidents occurred.

24.     Pursuant to Section 500-c, subd. 4, of the New York State Correction Law, the plaintiff was confined to the custody of the DOC Commissioner.

25.     Pursuant to Section 623, subd. 1, of the New York City Charter, the DOC Commissioner is charged with managing the custody and care of the plaintiff.

26.     Pursuant to Section 623, subd. 5, of the New York City Charter, the DOC

Commissioner has "[a]ll authority in relation to the custody and transportation of persons held for any cause in criminal proceedings…who require hospital care", including but not limited to the plaintiff herein.

27.     At all times mentioned herein, Commissioner Ponte was acting under the color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York, City of New York and/or the City of New York Department of Correction.

28.     At all times mentioned herein, Plaintiff was confined to the custody, control and care of the City and DOC, their agents, servants and employees, including but not limited to Commissioner Ponte and the defendant officers.

29.     At all times mentioned herein, Defendants, Correction Officer Alvin Gallardo, Correction Officer Kirk Hylton, Correction Officer "John" Powell, Correction Officer Richard Hill, Correction Officer Dwayne Cockburn, Correction Officer Richard Agbai, Captain Jerzy Skupien, Captain Rod Marcel, Captain Budnarine Behari, Correction Officer Lameen Barnes, Correction Officer Jamie Roman, Correction Officer Andre Philip, Correction Officer "John" Cauldwell, Correction Officer Nikolas Spiris, Correction Officer Carlos Diaz, Correction Officer Johnniemay Witcher, Correction Officer Keisha Johnson, Correction Officer Terrence Dixon, and Correction Officers John Doe 1-20 (collectively referred to herein as the "defendant officers"), were correction officers[1] employed by the City.

30.     The identities of Correction Officers John Doe 1-20 are not presently known, but they are believed to be correction officers and supervisory personnel endowed and bestowed with various ranks and appointments upon them by the City and/or DOC, and are sued in their capacities as individuals as well as in their official capacities as correction officers acting under

---

[1] As used herein, the term "correction officer" is intended to refer to City of New York Department of Correction officers in the general and not to any specific rank, title or position.

the color of law.

31.     Correction Officers John Doe 1-20 are those individuals who were personally involved in the incidents alleged herein; who failed to intervene and/or protect Plaintiff from the incidents alleged herein; who denied and/or delayed Plaintiff's access to timely and adequate medical care and treatment following the incidents alleged herein; who failed to report or truthfully report the incidents alleged herein; who lied to investigators and/or covered up the truth about the incidents alleged herein; who retaliated against Plaintiff; who directed and/or condoned attacks by inmates on Plaintiff; and who intimidated witnesses from coming forward and reporting the incidents alleged herein.

32.     The defendant officers are sued herein in their individual and official capacities.

33.     At all times mentioned herein, Corizon Health, Inc. and Corizon, Inc. (collectively "Corizon"), formerly known as Prison Health Services, Inc., its site directors, physicians, nurses, physician assistants, clinicians, therapists, and other medical staff, provided medical, mental health, dental and ancillary services to inmates at Rikers Island pursuant to a contract with the City, DOHMH and/or CHS.

34.     Defendants John and Jane Doe 1-20 are the site directors, physicians, nurses, physician assistants, clinicians, therapists, and other medical staff (collectively referred to herein as the "defendant healthcare workers") who witnessed and/or were aware of the incidents alleged herein; who provided medical, mental health, dental and ancillary services to Plaintiff; who were personally involved in drafting and submitting incomplete, false and/or misleading injury and medical reports; who failed to intervene and/or protect Plaintiff from the incidents alleged herein; who denied and/or delayed Plaintiff's access to timely and adequate medical care and treatment following the incidents alleged herein; who failed to report or truthfully report the

incidents alleged herein; and who lied to investigators and/or covered up the truth about the incidents alleged herein.

35.     Upon information and belief, and at all times mentioned herein, the City and DOC, owned, operated, maintained, managed, supervised, directed and controlled the jail facilities located within the City of New York, including but not limited to those located on Rikers Island.

36.     Upon information and belief, and at all times mentioned herein, the City and DOC were charged with the hiring, training, retention, direction, supervision, discipline, oversight, appointment and promotion of DOC officers, supervisors and staff in their employ, including but not limited to the defendant officers named herein.

37.     Upon information and belief, and at all times mentioned herein, Corizon was charged with the hiring, training, retention, direction, supervision, discipline, oversight, appointment and promotion of its medical staff assigned to Rikers Island, including but not limited to the defendant healthcare workers.

38.     Upon information and belief, and at all times mentioned herein, the City, through the DOC, managed, supervised, directed and controlled the custody, confinement, care and treatment of those persons confined to its various jails, including but not limited to the plaintiff.

39.     At all times mentioned herein, the defendants assumed the custody and care of the plaintiff.

40.     At all times mentioned herein, the defendants were entrusted with the custody and care of the plaintiff.

41.     At all times hereinafter mentioned, the defendants assumed a duty of care to the plaintiff.

42.     At all times hereinafter mentioned, the defendants owed a duty of care to the plaintiff.

43.     At all times hereinafter mentioned, the defendants owed a special duty of care to the plaintiff.

44.     As alleged herein, the defendants used unnecessary and excessive physical force on Plaintiff; assaulted and battered Plaintiff without legal justification; violated Plaintiff's civil and constitutional rights while acting under color of law; drafted and filed, or conspired to file, knowingly incomplete, false and/or misleading use of force reports, disciplinary reports, injury reports, and medical reports regarding the subject incidents; ignored, refused, denied and/or delayed Plaintiff's requests for medical attention for the injuries alleged herein; gave knowingly false statements; took specific and definitive measures to cover up evidence of their unlawful activities or the unlawful activities of others; instigated prisoners to assault, batter and harm Plaintiff; and failed to protect Plaintiff from known or foreseeable harm.

## STATEMENT OF FACTS

45.     Upon information and belief, on or about February 15, 2012, Plaintiff was received into DOC custody and remained confined to the custody, care and control of DOC through April 29, 2013.

46.     At all times mentioned herein, Plaintiff was an "adolescent", as that term is used and relied upon by DOC.

47.     On or about February 28, 2012, Plaintiff was the victim of an unnecessary and excessive use of force by several correction officers, including but not limited to Defendant Correction Officer Alvin Gallardo ("CO Gallardo"). On said date, Plaintiff was punched in the facial area by said officers without justification, causing Plaintiff to fall to the ground, at which

point said officers proceeded to kick Plaintiff in the chest, stomach and ribs. Plaintiff was then rear-cuffed. Said officer(s) then repeatedly stomped on Plaintiff's hand. As a result of the foregoing, Plaintiff suffered physical and emotional injuries, pain and suffering. Plaintiff was not provided any medical attention until the following day.

48.     On or about April 18, 2012, presently unknown correction officers assigned to the "Search" area at the Bronx Hall of Justice used unnecessary and excessive force on Plaintiff, punching Plaintiff in the nose and face, causing physical and emotional injuries, pain and suffering. As a result of injuries suffered during this incident, Plaintiff was caused to miss a court appearance scheduled for that day.

49.     On or about May 24, 2012, Defendant Correction Officer Kirk Hylton ("CO Hylton") used unnecessary and excessive force on Plaintiff, punching Plaintiff and using a chokehold, causing physical and emotional injuries, pain and suffering. CO Hylton then issued a false disciplinary infraction to Plaintiff to cover-up his unlawful conduct. Plaintiff was not provided any medical attention.

50.     On or about May 27, 2012, Defendant Correction Officer Powell ("CO Powell") and other presently unidentified officers used unnecessary and excessive force on Plaintiff, punching Plaintiff in the face, head and torso, causing physical and emotional injuries, pain and suffering. CO Powell and/or the unidentified officers then issued a false disciplinary infraction to Plaintiff to cover-up their unlawful conduct.

51.     On or about June 3, 2012, following a family visit, Defendant Correction Officers Richard Hill and Dwayne Cockburn took Plaintiff to a location without video cameras and punched him in the nose, head and torso, causing physical and emotional injuries, pain and suffering, including but not limited to two black eyes and swollen nose and facial area. Said

officers then made Plaintiff remove all of his clothing and walk to another cell. Plaintiff was denied medical treatment for eight (8) day following this incident.

52.     On or about June 16, 2012, Plaintiff was the victim of an unnecessary and excessive use of force by Defendant Correction Officer Richard Agbai ("CO Agbai"). Defendants, Captain Jerry Skupien ("Capt. Skupien") and Correction Officer Kirk Hylton ("CO Hylton"), were present for all or at least the majority of the fifteen-minute incident and failed to protect Plaintiff from same or intervene in any way on his behalf.

53.     On June 16, 2012, CO Agbai purposely kicked Plaintiff in the head while he was laying on the ground and flex cuffed behind his back. Video footage of said incident, as well as CO Agbai's own admissions during a disciplinary proceeding commenced against him pursuant to Section 75 of the Civil Service Law ("OATH hearing"), confirms same. CO Agbai also provided a recorded statement to a DOC investigator in which he admitted that he "stomped the [plaintiff's] head"; that he "kicked [the plaintiff's] head into the floor"; that he lifted his foot and pushed down on the back of Plaintiff's head, causing the inmate's face to hit the floor; and that he struck Plaintiff several times in his face and facial area while Plaintiff was on the floor. Following the incident, Capt. Skupien, CO Agbai and CO Hylton knowingly submitted false and/or misleading use of force and injury reports. At the conclusion of the OATH hearing, a Report and Recommendation was issued finding CO Agbai's "conduct to be deliberate, savage, and reprehensible, for which the only appropriate penalty is termination of his employment, and I so recommend." The hearing officer's Report and Recommendation was subsequently affirmed on appeal.

54.     As a result of the aforesaid assault, Plaintiff suffered physical injuries, including but not limited to the loss of a permanent front tooth and lacerations beneath his chin requiring

sutures, pain and suffering, and psychological and emotional injuries. Additionally, Plaintiff was denied access to timely and appropriate medical care and treatment following said use of force.

55.     The following day, on or about June 17, 2012, Plaintiff was in the clinic and laying on a gurney when a presently unknown DOC captain pushed Plaintiff's head into a wall and punched him in the ribs, causing injury, pain and suffering.

56.     Thereafter, on or about December 17, 2012, Plaintiff was again the victim of an unnecessary and excessive use of force, this time by Defendants Captain Rod Marcel, Captain Budnarine Behari, Correction Officer Lameen Barnes, Correction Officer Roman, Correction Officer Philip, Correction Officer Nikolas Spiris, Correction Officer Carlos Diaz, Correction Officer Johnniemay Witcher, Correction Officer Keisha Johnson, Correction Officer Terrence Dixon, and other presently unidentified correction officers. On that date, said officers entered Plaintiff's cell for the sole purpose of causing him physical harm in retaliation for Plaintiff and his mother filing complaints regarding the abuses of authority aforesaid, as well as Plaintiff asking one of the officers what another inmate had done wrong that would cause said officers to go into that inmate's cell just minutes before and beat him so profusely. Once in Plaintiff's cell, said officers punched Plaintiff several times in the face and ribs while another officer grabbed Plaintiff by the throat and squeezed tightly. Upon removing Plaintiff from his cell, he was then handcuffed to a gurney and wheeled to an examination room in the clinic that did not have security cameras, at which time Captain Behari and Officers Roman and Spiris proceeded to punch and pummel Plaintiff mercilessly in his head, facial area and body, while sarcastically yelling "Stop resisting." At one point, Captain Behari choked Plaintiff until he lost consciousness. Captain Marcel and Officers Barnes, Philip, Diaz, Witcher, Johnson, and Dixon were also present, knew that the beating was occurring by either witnessing same or personally

participating in it, and prevented clinic staff from intervening or providing medical attention to Plaintiff. These beatings during the cell extraction and at the clinic were clearly intended to punish and retaliate against Plaintiff for his efforts to report various abuses by officers. The beating in clinic took place for over an hour.

57.    Following this incident, Defendants Captain Marcel, Captain Behari, Correction Officer Barnes, Correction Officer Roman, Correction Officer Philip, Correction Officer Spiris, Correction Officer Diaz, Correction Officer Witcher, Correction Officer Johnson, Correction Officer Dixon, and investigating supervisors, knowingly submitted incomplete, false and/or misleading use of official reports, disciplinary infractions and inmate injury reports in order to cover up their unlawful conduct. Said officers also drafted and submitted a "Notice of Search and Search for Contraband" as a false predicate for the cell extraction on said date.

58.    In the days thereafter, Captain Marcel made overt threats to Plaintiff that if he truthfully reported to officials what happened, Captain Marcel and other officers involved would plant weapons on him so that he would be charged with another crime. Captain Marcel also made overt threats to clinic staff that were present during the beating that if they truthfully reported to officials what happened, they would be found and retribution sought, even if they were transferred to another jail.

59.    Following the December 17, 2015 beating at the clinic, an investigation was conducted by the New York City Department of Investigation ("DOI"). The DOI Report concluded that Captain Behari and Officers Roman and Spiris assaulted and used unauthorized force on Plaintiff in the clinic; that said defendants filed incomplete and misleading reports and purposely "failed to include any mention of what transpired in the clinic;" that Captain Marcel failed to report what happened at the clinic although present and required to do so; and referred

the matter to the Bronx District Attorney's Office for criminal prosecution and the Department of Correction for disciplinary measures. Upon information and belief, none of these defendants were prosecuted nor their employment terminated as a result of the December 17, 2012 incident.

60.     In addition to the defendant officers being present, that portion of the December 17, 2012 assault occurring in the clinic area was also witnessed by and/or reported to several healthcare workers in the employ of Defendant Corizon, including but not limited to Physician's Assistant Shiela Kris, Mental Health Clinician Daphne Herard, Mental Health Clinician Randi Cawley, Dr. Leon Scrimmager, and Dr. Fiona Radcliffe. Not only did these healthcare workers see what happened, but Plaintiff begged of them, "Don't leave me, they're going to kill me." Said healthcare workers failed to intervene, failed to protect Plaintiff, failed to truthfully report what they had seen and heard, knowingly submitted incomplete, false and/or misleading reports regarding how the plaintiff's injuries were sustained, and took specific actions to cover-up, mitigate and/or conceal the unlawful conduct of the defendant officers and the injuries they caused.

61.     On March 18, 2013, Plaintiff was punched in his nose, head and torso and his head was slammed into the floor by Correction Officer Cauldwell and Captain "John Doe", Shield No. 1510, causing Plaintiff to suffer physical and emotional injuries, pain and suffering.

62.     Upon information and belief, agents, servants and/or employees of Corizon, DOHMH and CHS witnessed all or part of the attacks alleged herein to have occurred in the clinic areas and failed to intervene and protect Plaintiff.

63.     Additionally, with regard to all of the aforesaid incidents, agents, servants and/or employees of Corizon, DOHMH and CHS failed to truthfully report what they had seen and heard, submitted knowingly false, incomplete and/or misleading reports regarding the cause of

the plaintiff's injuries, submitted knowingly false, incomplete and/or misleading reports regarding the medical care provided on such dates, and took specific actions to cover-up and/or conceal the unlawful conduct of the defendant officers.

64.     Upon information and belief and at all times mentioned herein, Corizon, DOHMH and CHS had policies and practices in place, whether express or implied, to not accurately report the cause, nature and extent of inmate injuries, especially those resulting from officer action or inaction; to document the cause of an inmate injury as described by an officer rather than what the healthcare worker knew or believed to be true; to insulate officers from being the attributed cause of an inmate injury; to avoid documenting, or at the very least minimize, an officer's actions or inactions in causing said injuries; and to submit false, incomplete and/or misleading reports regarding the medical care provided.

65.     In addition to the foregoing, and in retaliation for complaints Plaintiff and his mother made about officers to the Investigation Division and other federal, State, City and/or DOC agencies, the defendant correction officers and other presently unknown officers set Plaintiff up to be attacked and harmed by other inmates on at least twelve (12) different occasions. To that end, Plaintiff was attacked by other inmates, sometimes as many as three-on-one, on February 24, 2012, March 2, 2012, March 8, 2012, March 9, 2012, April 30, 2012, May 4, 2012, May 16, 2012, July 7, 2012, July 19, 2012, November 19, 2012, March 1, 2013 and April 22, 2013. Incident and/or injury reports were not created for many of these incidents, and many times the defendant officers refused Plaintiff's requests for medical attention. Plaintiff suffered physical and emotional injuries, pain and suffering as a result of each attack.

66.     Prior to each use of force aforesaid, no reasonable officer would have perceived Plaintiff's conduct to be aggressive or confrontational such that would require or warrant an

officer to intentionally strike Plaintiff.

67.     At no time prior to using force on Plaintiff did an officer attempt to defuse any perceived situation by issuing a verbal command or warning to Plaintiff, by seeking intervention by mental health staff, by using non-contact control techniques such as chemical agents or an electronic immobilization shield, or by applying control holds.

68.     The defendant officers could have avoided punching Plaintiff in the face and head but neglected or refused to do so.

69.     The defendant officers subjected Plaintiff to cruel, unusual, inhumane and degrading treatment.

70.     The defendant officers subjected Plaintiff to unnecessary and wanton infliction of pain.

71.     The defendant officer's conduct was grossly disproportionate to the circumstances then and there existing.

72.     The defendant officers did not need to use physical force and/or inflict blows upon Plaintiff as Plaintiff was not physically threatening.

73.     The defendant officers did not need to use physical force and/or inflict blows upon Plaintiff in self-defense, in order to maintain order, in order to enforce observation of discipline, or in order to secure or control Plaintiff.

74.     At no point during the time period mentioned herein did Plaintiff neglect or refuse a lawful order of an officer or rule or regulation of DOC, nor did he resist or disobey any lawful command of an officer, nor did he offer violence to any officer or other prisoner, nor did he injure or attempt to injure DOC property, nor did her attempt to escape, nor did he attempt to lead or take part in a revolt or insurrection.

75.     Following each of the subject incidents, DOC, its agents, servants and/or employees, including but not limited to the defendant officers, refused and/or delayed Plaintiff's access to timely, reasonable and appropriate medical care.

76.     As described herein, Plaintiff suffered physical injuries of an objectively serious and important nature; however, DOC, DOHMH, CHS and Corizon, their agents, servants and/or employees, including but not limited to the defendant officers and healthcare workers, delayed and/or failed to authorize, transport and/or provide timely and adequate medical care and treatment to Plaintiff.

77.     Plaintiff's medical condition following each use of force and inmate attack was of such gravity that it can be considered a serious medical condition. The defendants and their agents, servants and employees, by ignoring Plaintiff's requests for treatment, acted with deliberate indifference.

78.     As a result of the defendants' deliberate indifference, Plaintiff experienced prolonged and significantly increased pain and suffering.

79.     Following the subject incidents, the defendant officers and healthcare workers, acting individually and/or in concert and conspiracy with each other, and in an attempt to mitigate, cover-up and/or conceal the defendant officers' unlawful conduct, did draft, execute and file false official documents and medical records and gave false sworn statements, reports and/or testimony wherein they dishonestly claimed that Plaintiff's injuries were either self-inflicted, caused by another prisoner, or not as significant as presented.

**FIRST CLAIM FOR RELIEF:**
**VIOLATIONS OF PLAINTIFF'S CIVIL RIGHTS**
_____

80.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs

"1" through "79", inclusive, of this Complaint, as if same were fully set forth herein.

81.     As set forth above, the defendant correction officers, acting under the color of law, did intimidate, assault, batter and use excessive physical force on Plaintiff; did direct, incite and cause other inmates to attack and harm Plaintiff out of deliberate indifference, disinterested malevolence and/or actual malice; did use force on Plaintiff as punishment; did retaliate against Plaintiff for exercising his First Amendment rights; did knowingly draft and file false reports and/or gave false sworn testimony in an effort to cover-up evidence of their unlawful activities; did ignore, refuse, deny and/or delay Plaintiff's access to timely and reasonable medical care; and were deliberately indifferent to Plaintiff's safety and medical needs, all without legal cause or justification and with purposeful intent to cause harm to Plaintiff.

82.     As set forth above, the defendant healthcare workers, acting under the color of law, did ignore, refuse, deny and/or delay Plaintiff's access to timely and reasonable medical care; did knowingly draft and file false medical and injury reports and/or gave false sworn statements in an effort to cover-up evidence of their unlawful activities as well as the defendant officers' misconduct; and were deliberately indifferent to Plaintiff's medical needs, all without legal cause or justification and with purposeful intent to cause harm to Plaintiff.

83.     Commissioner Ponte and DOC's wardens, deputy wardens, and command personnel were deliberately indifferent to Plaintiff's security, safety and physical well-being in that their long-standing history of inaction resulted in Plaintiff being repeatedly assaulted and battered by officers and prisoners; did fail to follow procedures and directives including but not limited to prisoner classification, housing assignment procedures, disciplinary procedures, reporting and investigating officer-on-prisoner and prisoner-on-prisoner violence, and use of force investigations; did fail to train, supervise and control the defendant officers in the use of

force, the quantum of force to be applied, truthful and complete reporting of all incidents, making medical care available to prisoners, and peacefully interacting with and gaining compliance from prisoners who have or may exhibit mental health issues; did fail to protect Plaintiff from known and foreseeable harm; did fail to remove or segregate Plaintiff from known danger; did ignore, refuse, deny and/or delay Plaintiff's access to timely and reasonable medical care following said incidents; did fail to follow medical orders; did knowingly review and accept false reports, incident reports, and/or disciplinary infractions in an effort to cover-up evidence of their subordinate's unlawful activities; did fail to investigate similar complaints and grievances regarding the defendant officers; did fail to implement recommendations of training, re-training, suspension and/or termination of employment; and were otherwise deliberately indifferent to Plaintiff's needs.

84.     As set forth above, all defendants, including Commissioner Ponte, failed to notify City, State or federal authorities as to what they had seen and/or heard, as required by law.

85.     As set forth above, all defendants, including Commissioner Ponte, failed to take appropriate action to investigate and report the subject incidents, as required by law.

86.     As set forth above, the subject incidents, as well as the defendant officers' ignoring, acquiescence, joining and/or complicity in same, constituted an unnecessary, unreasonable, and excessive use of force.

87.     On each occasion claimed aforesaid, Defendants acted with deliberate indifference to the plaintiff's safety, security, health and immediate medical needs.

88.     As a direct and proximate result of the defendants' deliberate indifference to Plaintiff's objectively serious medical conditions, the plaintiff's resulting physical, psychological and emotional injuries, pain and suffering were significantly exacerbated and his recovery

compromised.

89.     As set forth above, the defendants have made every effort to conceal the truth about what actually occurred, including but not limited to covering up, or attempting to cover up, the illegal conduct complained of herein.

90.     The aforesaid acts and omissions violated the plaintiff's clearly established civil rights secured by the United States Constitution and were the direct and proximate cause of the physical, psychological, and emotional injuries he suffered.

91.     The actions of the defendant officers were malicious in the instance.

92.     As set forth above, Commissioner Ponte and his predecessors and subordinates at the DOC have had, and continue to have, a custom and practice of deliberate delay and avoidance in investigating allegations of abuse and other misconduct by their officers, to the detriment of the plaintiff.

93.     Commissioner Ponte and the defendant officers, by reasonable diligence, could have prevented the aforesaid wrongful acts from being committed.

94.     The defendant healthcare workers could have prevented the aforesaid wrongful acts from being committed by exercising reasonable diligence.

95.     Commissioner Ponte and the defendant officers, by reasonable diligence, could have mitigated the plaintiff's injuries had they intervened in the aforesaid unlawful conduct and/or protected Plaintiff.

96.     The defendant healthcare workers could have mitigated the plaintiff's injuries had they intervened in the aforesaid unlawful conduct and/or protected Plaintiff.

97.     As set forth above, the defendants were deliberately indifferent to Plaintiff's medical condition by their failure to provide access to timely and appropriate medical care and

carry out medical orders; their conduct was so grossly incompetent, inadequate, and excessive as to shock the conscience, and was so intolerable to fundamental fairness; and maliciously and sadistically used force to cause harm.

98.     As a result of the foregoing, Plaintiff was caused to be subjected to the deprivations of rights, privileges and/or immunities secured by the Constitution and statutes of the United States of America and has been damaged thereby.

99.     As a proximate and direct cause of said defendants' conduct, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries, pain and suffering, and pecuniary loss.

<div align="center">

**SECOND CLAIM FOR RELIEF:**
**CONSPIRACY PURSUANT TO 42 U.S.C. §§1983, 1985 AND 1986**
_____

</div>

100.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "99", inclusive, of this Complaint, as if same were fully set forth herein.

101.    Commissioner Ponte, DOC supervisors, the defendant officers, and the defendant healthcare workers, acting under the color of law, willfully conspired with one another to deprive the plaintiff of his constitutional rights, including but not limited to his right: to be free from cruel and unusual punishment; to be free from the use of unreasonable and/or excessive force; to be free from unreasonable delay and/or denial of medical care; to be free from harassment and intimidation; to be free from reprisal for exercising his First Amendment rights; to be free from malicious and retaliatory attacks; to be free from conduct intended to chill his speech; to be free from false and subversive statements and proceedings designed to cover-up the misconduct of others; to equal protection of the law; to equal privileges and immunities under the law; to associate and speak freely; and to have access to and seek redress in the courts.

102.   It was part of said conspiracy that said defendants did incite violence against Plaintiff; did deny and/or delay due and necessary medical care and treatment to the plaintiff; did fail to protect the plaintiff from known and/or avoidable harm while he was in their custody; did file false disciplinary charges against Plaintiff; did fabricate use of force and injury reports; did deliberately suppress the truth; did fail to report the aforesaid incidents to officials, as required by law; and did submit false reports, statements and/or testimony to support and corroborate the fabricated allegations lodged against the plaintiff, for their own benefit.

103.   As a result of said conspiracy and/or said defendants' furtherance of the conspiracy, Plaintiff has been injured and deprived of the rights and privileges afforded by the Constitution and statutes of the United States of America.

104.   Said defendants had knowledge that a 42 U.S.C. §§1983, 1985 and 1986 conspiracy was in progress, had the power to prevent or aid in preventing the conspiracy from continuing, and neglected or refused to do so.

105.   With due diligence, Commissioner Ponte, DOC supervisors and the defendant officers and healthcare workers could have promptly reported the subject events to superiors and to duly authorized investigators.  Their failure to do so allowed the conspiracy to continue and the truth remain suppressed.

106.   Had said defendants complied with the law and furnished truthful information to authorities about their conduct and/or Plaintiff's conduct, the conspiracy would not have succeeded to the extent that it has.

107.   As a proximate and direct cause of said defendants' conduct, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries, pain and suffering, and pecuniary loss.

## THIRD CLAIM FOR RELIEF:
## MUNICIPAL LIABILITY
_____

108.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "107", inclusive, of this Complaint, as if same were fully set forth herein.

109.    The defendant officers and healthcare workers, collectively and individually, while acting under color of law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the City, DOC, DOHMH, CHS and Corizon and which is forbidden by the Constitution of the United States.

110.    That prior to February 2012, the City and Commissioner Ponte, and his predecessors, developed and maintained customs, policies, usages, practices, procedures and rules that: (a) ignore the civil and statutory rights of persons in their custody and control; (b) deprive persons in their custody and control their constitutional and statutory rights; (c) permit the use of force in an unreasonable, unnecessary, unjustified, excessive, retaliatory and punitive manner; (d) fail to adequately instruct and supervise the officers and healthcare workers under said defendants' control in the proper and appropriate care and treatment of prisoners in their custody and control; (e) fail to adequately instruct and supervise the officers and healthcare workers under said defendants' control in communicating with, understanding and gaining compliance from prisoners including prisoners who may be suffering from mental illness; (f) fail to adequately train, re-train, inspect and supervise the officers and healthcare workers under said defendants' control in the use of force, avoidance of force, truthful reporting of incidents, duty to protect and intervene, and drafting and maintaining complete and truthful use of force, injury and medical reports; (g) inadequately provide for the investigation of complaints of harassment, intimidation, misconduct, excessive use of force, officer abuse, discrimination, denial and/or

delay of medical care, and other misconduct by officers, healthcare workers and supervisors, and inadequately punishing the subjects of those complaints which were substantiated; (h) tolerate acts of brutality and indifference; (i) tolerate acts of retaliation for a prisoner or his family member making a complaint against an officers or healthcare worker; (j) operate to insulate officers and healthcare workers who engage in criminal or other serious official misconduct from detection, prosecution, and punishment; and (k) tolerate officers, healthcare workers and supervisors who engage in a pattern and practice of actively and passively covering up misconduct by fellow officers and healthcare workers, thereby establishing and perpetuating a "code of silence", which has become so engrained in the defendants so as to constitute a policy of the City, DOC, DOHMH, CHS and Corizon.

111.    That the aforementioned customs, policies, usages, practices, procedures and rules of the City, DOC, DOHMH, CHS and Corizon resulted in (a) Plaintiff being involved in violent altercations with the same officers over and over again, (b) Plaintiff being denied access to timely medical care over and over again, (c) the defendant officers not being disciplined or terminated from employment despite the prevalence of controverted uses of force they are involved in, (d) the defendant officers and healthcare workers not being disciplined or terminated from employment despite recommendations of same by investigators and/or administrative panels, (e) Plaintiff being retaliated against for exercising his First Amendment rights, (f) Plaintiff being attacked by other prisoners over and over again, (g) Plaintiff being miscategorized as a violent, aggressive or non-compliant prisoner; (h) Plaintiff being subject to disciplinary procedures under false pretenses; and (i) Plaintiff receiving inadequate or non-commensurate medical care due to officers and healthcare workers misstating the cause or nature of an injury in an effort to mitigate an officer's involvement or the extent of damage done.

112.    The DOC not only condones officer-on-prisoner and prisoner-on-prisoner violence, but the entrenched cultures of the department promotes, facilitates, and encourages it. Indeed, DOC officers cruelly use violence as a management tool.

113.    The City's long-standing failure and/or refusal to supervise the corrections officers and healthcare workers under its control, including supervisory staff, is now so institutionalized as to constitute a policy or custom of tolerating and authorizing the type of abuse alleged herein. It is this policy or custom of abuse and cover-up that has caused the deprivation of the plaintiff's rights.

114.    Said policy or custom is further evidenced by frequent and significant findings of misconduct over a period of years by commissioners, command personnel, supervisors, site medical directors, and the officers and healthcare workers they supervise.

115.    The failures and refusals by the City to hold these officers and healthcare workers accountable is a proximate cause of the injuries sustained by the plaintiff, and undoubtedly hundreds of other persons.

116.    Through promotions and other financial and status incentives, the City has the power to reward officers and healthcare workers who perform their jobs adequately and to punish – or at the very least fail to reward – those who do not. The City's actions and omissions have created and maintained the perception among high-ranking supervisors that a supervisor who turns a blind eye towards evidence of officer harassment and intimidation, excessive use of force, discriminatory conduct, cover-up, medical neglect, or other misconduct, and fails to investigate these incidents, will suffer no damage to his or her career or financial penalty.

117.    The pattern of unchecked abuse by officers, healthcare workers and supervisory staff, the extent to which these unlawful practices have been adopted by significant numbers of

the staff, and the persistent failure or refusal of the City and DOC, DOHMH and CHS Commissioners to supervise these persons properly and to take action to curb the misconduct, demonstrates a policy of deliberate indifference which tacitly authorizes the misconduct claimed by the plaintiff

118.    The foregoing customs, policies, usages, practices, procedures and rules of the City, DOC, DOHMH, CHS and Corizon constituted deliberate indifference to the safety, well-being and constitutional rights of the plaintiff and were the direct and proximate cause of the constitutional violations suffered by the plaintiff as alleged herein.

119.    The foregoing customs, policies, usages, practices, procedures and rules of the City, DOC, DOHMH, CHS and Corizon were the moving force behind the constitutional violations suffered by the plaintiff as alleged herein.

120.    Prior to and at the time of the subject dates of incident, there existed a pattern and practice of harassment, intimidation, excessive use of physical force, discrimination, cover-up and conspiracy to cover-up unlawful conduct, refusals and/or failures to provide medical care or make medical care timely available, failures to conduct unbiased and thorough investigations of same and to discipline staff meaningfully and promptly for misconduct, and the long-standing failure or refusal to supervise officers and healthcare workers, including supervisory staff, are now so institutionalized as to constitute a policy or custom of tolerating and authorizing the wrongs alleged herein. It is this policy or custom of abuse and cover-up that has caused the deprivation of Plaintiff's constitutional rights.

121.    The City, DOC, DOHMH, CHS and Corizon have failed or refused to hold accountable high-ranking supervisors (e.g., site medical directors, physicians, captains, deputy wardens, assistant deputy commissioners, deputy commissioners, and commissioners)

in the face of frequent and significant misconduct, over a period of years, by these supervisors and by the officers and healthcare workers they supervise. This failure has subjected Plaintiff and other members of the public to the constitutional and statutory violations alleged herein.

122.    The supervisory staff within the DOC, as well as the command structure, knew and/or know that the pattern of indifference to officer-on-prisoner and prisoner-on-prisoner violence, officer harassment, intimidation, physical abuse, cover-up, and delay and denial of medical care, as described above, existed and still exists within the DOC. The failure of the DOC and DOHMH Commissioners to take measures to curb this pattern of brutality constitutes acquiescence in the known unlawful behavior of their officers and healthcare workers. The prevalence of these practices and general knowledge of their existence, and the failure of these defendants to take remedial action despite the fact that the foregoing has been persistently brought to their attention, constitutes deliberate indifference to the rights and safety of all individuals in their custody, and Plaintiff in particular.

123.    The DOC operates under a system-wide policy.  With some exceptions, the DOC trains all of its officers at their respective Training Academy according to a uniform curriculum; maintains a centralized Investigation Division to investigate allegations such as those contained herein under uniform procedures; and maintains a centralized unit to conduct administrative prosecutions (or to decline to prosecute, or to plea-bargain) in those few instances where the DOC substantiates the allegation(s). Because the DOC Commissioner and senior officers are aware of and tolerate certain practices by their officers, including those that are inconsistent with formal policy, these practices have become widespread, longstanding, and deeply imbedded in the DOC culture and constitute unwritten policies and customs.

124.    Commissioner Ponte has acknowledged DOC's failures to properly train its

officers and monitor interaction between officers and inmates.

125.    Moreover, a August 4, 2014 report issued by the United States Attorney for the Southern District of New York, detailing a U.S. Department of Justice ("DOJ") investigation into the treatment of adolescent male inmates at Rikers Island (e.g., excessive uses of force by correction officers and supervisors, protection from inmate-on-inmate violence, and punitive segregation), concluded that there is a pattern and practice of "rampant use of unnecessary and excessive force by DOC staff…[inadequate protection] from harm caused by violence inflicted by other inmates…a deep-seated culture of violence…DOC staff routinely utilize force not as a last resort, but instead as a means to control the adolescent population and punish disorderly or disrespectful behavior."   Said report also detailed a "powerful code of silence" that "prevents staff who witness force from reporting [it]."   While the DOJ investigation focused on adolescent violence, the "investigation suggests that the systemic deficiencies identified in th[e] report may exist in equal measure at the [adult] jails on Rikers."

126.    The supervisory staff of the DOC and DOHMH has consistently failed to investigate allegations such as those contained herein and to discipline officers and healthcare workers who violate DOC and/or DOHMH guidelines. The investigation of these incidents by central office and/or supervisory staff reflects a bias in favor of uniformed officers and healthcare workers. Furthermore, officers, healthcare workers and staff who are known to have violated an individual's civil rights in one command, hospital or clinic are often transferred to another command rather than be disciplined, demoted or fired.

127.    Upon information and belief, the pattern of misconduct alleged herein has been condoned by the DOC Commissioner and ranking commanders and supervisors of the DOC, who have been or are aware of the number, frequency, and severity of these incidents and of the

continuing risk of physical injury at the hands of uniformed officers. The DOC Commissioner, commanders, captain and deputies, facility wardens and deputies, and supervisors receive and/or received a daily compilation of reports from DOC commands documenting violent incidents, including an officer's use of force and prisoner violence. These reports, which are circulated throughout the DOC, contain brief summaries of the incident. These summaries have documented, and continue to document, routine uses of force by officers under circumstances which very often suggest that the officers' accounts are fabricated to cover up brutality and other misconduct. These reports routinely document injustices the same or similar to the allegations contained herein, and consistently find no basis to question the officer's conduct, even when an officer's report describes conduct which is proscribed by DOC written policy or fails to account for the prisoner's injuries.

128.     With rare exception, officers and healthcare workers whose misconduct is brought to the attention of supervisory personnel continue to work without any substantial disciplinary action being taken against them.

129.     Although the DOC has computerized systems capable of identifying officers involved in multiple unlawful incidents and/or cover-ups, this information has not been utilized by DOC Commissioners, commanders or supervisors to reduce the severity or incidence of these events. The fact that these abuses by officers remain unchecked and unrestrained leads the staff to believe that they may act with impunity.

130.     Similarly, DOC officials and supervisory staff have consistently failed to investigate grievances, prisoner and public complaints, oversight committee's findings and recommendations, and/or complaints made to the City's 311 service, the department's Internal Affairs Bureau and Investigation Department, or the Board of Corrections regarding: officer

abuses, harassment, intimidation and disrespect; excessive uses of force; cover-ups; denial and/or delay of medical treatment or other inattention; discrimination due to physical or mental disability; violations of DOC directives and guidelines and other misconduct; and have failed to discipline the subjects of those grievances and complaints which were substantiated.

131.    As a proximate and direct cause of said defendants' conduct, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries, pain and suffering, and pecuniary loss.

## PENDANT STATE CLAIMS

132.    This action falls within one or more of the exceptions set forth in N.Y. C.P.L.R. §1602.

## FIRST CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
## ASSAULT, BATTERY, HARASSMENT AND INTIMIDATION

133.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "132", inclusive, of this Complaint, as if same were fully set forth herein.

134.    As set forth above, Plaintiff was harassed, intimidated, assaulted, and battered by the defendant officers.

135.    As set forth above, Plaintiff was harassed, intimidated, assaulted, and battered by various prisoners at the encouragement and/or behest of the defendant officers, including but not limited to CO Hill and CO Cockburn.

136.    The aforesaid uses of intimidation and physical force against Plaintiff were excessive, unnecessary, unprovoked and unlawful.

137.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries, pain and suffering, a violation of his civil and due process rights, and pecuniary loss.

**SECOND CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
CONSPIRACY**
_____

138.  Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "137", inclusive, of this Complaint, as if same were fully set forth herein.

139.  As set forth above, Commissioner Ponte and the defendant officers and supervisory staff conspired with and amongst one another to (a) harass, intimidate, assault and batter Plaintiff; (b) initiate false disciplinary proceedings against Plaintiff; (c) deny and/or delay medical treatment to Plaintiff; (d) cover up and/or minimize misconduct of the defendant officers; and (e) otherwise deprive the plaintiff of his constitutional, statutory and common law rights.

140.  As set forth above, Commissioner Ponte and the defendant officers and healthcare workers, and supervisory staff of both, conspired with and amongst one another to (a) initiate false disciplinary proceedings against Plaintiff; (b) deny and/or delay medical treatment to Plaintiff; (c) cover up and/or minimize misconduct of the defendant officers; (d) misstate the cause, nature and extent of an injury in an effort to mitigate an officer's involvement or the extent of damage done; and (e) otherwise deprive the plaintiff of his constitutional, statutory and common law rights.

141.  As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries, pain and suffering, and pecuniary loss.

**THIRD CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
NEGLIGENCE**
_____

142.  Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "141", inclusive, of this Complaint, as if same were fully set forth herein.

143.    Commissioner Ponte and the defendant officers were negligent in the instances alleged herein in their operation, supervision, enforcement, maintenance, management and control of the facilities located at Rikers Island in the general and as it relates to the plaintiff in particular; in failing to act reasonably in the instance; in failing to protect the health and welfare of the plaintiff; in failing to provide the plaintiff with reasonably safe conditions; in failing to quickly and diligently intercede on behalf of Plaintiff; in failing to protect Plaintiff; in setting a trap for the plaintiff; in failing to take cognizance of a dangerous and escalating situation; in failing to be truthful and consistent in reporting officer-on-prisoner and prisoner-on-prisoner violence; in violating the plaintiff's civil, statutory and common law rights; in infringing upon the freedoms afforded to the plaintiff; in being reckless to the plaintiff's health, safety, and security; in causing, creating and/or allowing unlawful conditions to be and remain; in being disinterested, indifferent, apathetic and/or uninvolved during incidents of officer-on-prisoner and prisoner-on-prisoner violence; in failing to timely prevent and/or mitigate the subject incidents despite having notice, time and opportunity to do so; in failing to give the plaintiff notice and/or warning; in causing and/or allowing the plaintiff to be injured; in causing and creating a dangerous condition conducive to causing injury; in causing and creating a dangerous and hazardous condition to exist; in creating and allowing a nuisance to exist; in failing to provide for the safety of the plaintiff; in failing to seek proper training; in failing to be adequately trained; that the alleged incidents would not have occurred but for the negligence, in whole or in part, of the defendant officers; in failing to protect the plaintiff in each and every instance set forth above; in causing, permitting and/or allowing the plaintiff to be assaulted, battered, threatened and menaced; in denying and/or delaying the plaintiff's access to timely, due and adequate medical care for the injuries he suffered during the subject incidents; in failing to fully, faithfully

and reasonably provide the plaintiff access to necessary medical care; and said defendants were otherwise negligent, careless and reckless in the instance.

144.     Corizon, its agents, servants and employees, including but not limited to the defendant healthcare workers, were negligent in the instance in their operation, supervision, enforcement, maintenance, management and control of the healthcare at Rikers Island in the general and as it relates to the plaintiff in particular; in failing to reasonably and adequately supervise and control its healthcare workers; in failing to protect the health and welfare of the plaintiff; in failing to provide the plaintiff with reasonably safe conditions; in failing to quickly and diligently intercede on behalf of Plaintiff; in failing to protect Plaintiff; in setting a trap for the plaintiff; in failing to take cognizance of a dangerous and escalating situation; in failing to have an adequate policy to ensure the truthful and consistent reporting of officer-on-prisoner and prisoner-on-prisoner violence; in violating the plaintiff's civil, statutory and common law rights; in infringing upon the freedoms afforded to the plaintiff; in being deliberately indifferent to the plaintiff's health, safety, and security; in causing and allowing clinic areas to be and remain a violent and dangerous place for prisoners; in causing, creating and/or allowing unlawful conditions to be and remain; in having a policy, either written or by custom, which accepts and/or promotes disinterest, indifference, apathy and/or uninvolvement during incidents of officer-on-prisoner and prisoner-on-prisoner violence; in failing to timely prevent and/or mitigate the subject incidents despite having notice, time and opportunity to do so; in failing to reasonably and adequately discipline its healthcare workers; in failing to give the plaintiff notice and/or warning; in causing and/or allowing the plaintiff to be injured; in causing and creating a dangerous condition conducive to causing injury; in causing and creating a dangerous and hazardous condition to exist; in creating and allowing a nuisance to exist; in failing to provide for

the safety of the plaintiff; in failing to adequately train their healthcare workers; in failing to have trained personnel; that the alleged incidents would not have occurred but for the negligence, in whole or in part, of Corizon and the healthcare workers in its employ; in failing to protect the plaintiff in each and every instance set forth above; in causing, permitting and/or allowing the plaintiff to be assaulted, battered, threatened and menaced; in denying and/or delaying the plaintiff's access to timely, due and adequate medical care for the injuries he suffered during the subject incidents; in failing to fully, faithfully and reasonably provide the plaintiff was necessary medical care; and said defendant was otherwise negligent, careless and reckless in the instance.

145.    Inasmuch as the defendant healthcare workers were acting for, upon, and in furtherance of the business of Corizon and within the scope of their employment, Corizon is liable under the doctrine of *respondeat superior* for the tortious actions of said persons.

146.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries, pain and suffering, and pecuniary loss.

## FOURTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: VIOLATION OF NEW YORK CONSTITUTION AND STATUTES

147.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "146", inclusive, of this Complaint, as if same were fully set forth herein.

148.    As set forth above, Commissioner Ponte, the defendant officers and Corizon, its agents, servants and employees, deprived Plaintiff of his rights to free speech, to be free from gratuitous and excessive force and punishment, to be free from cruel and unusual punishment, to have timely and appropriate medical care, and to due process of law, as guaranteed to him by the Constitution and statutes of the City and State of New York and the Charter of the City of New York.

149.   The aforesaid violations, and the failure of the defendant officers and Corizon, its agents, servants and employees, including but not limited to the defendant healthcare workers, to take appropriate steps to curb the widespread and continuing pattern of same, violated Plaintiff's rights under the New York State Constitution to due process of law, to free speech, and to be free from degrading treatment and physical abuse.

150.   By their refusal to provide prompt medical attention to plaintiff after he was injured, these defendants violated Plaintiff's statutory rights.

151.   The defendants' conduct complained of herein violated Plaintiff's rights secured by the Constitution of the State of New York, Article 15 of the New York State Executive Law, Section 40 *et seq*. of the New York State Civil Rights Law, New York Corrections Law, and Sections 8-107 *et seq*., 8-502 *et seq*. and 8-603 *et seq*. of the Administrative Code of the City of New York.

152.   As a result of the foregoing, Plaintiff suffered and continues to suffer severe and serious physical, psychological and emotional injuries, pain and suffering, and pecuniary loss.

## FIFTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION

153.   Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "152", inclusive, of this Complaint, as if same were fully set forth herein.

154.   Corizon was negligent, careless and/or reckless in the hiring, training, retention, supervision, direction, control, appointment and/or promotion of the its agents, servants and employees, in that said employees lacked the experience and ability to be employed by Corizon and/or contracted to the City, DOC, DOHMH and CHS; in failing to exercise due care and caution in their hiring, appointment and promotion practices, and in particular, hiring individuals

who lacked the mental capacity and ability to function as employees of said defendant; in that the defendant's employees lacked the maturity, sensibility and intelligence to be employed by said defendant; in that said defendant knew of the lack of ability, experience and maturity of the employees when they hired them; in that said defendant failed to suspend and/or terminate the employees when such action was either proper or required; and in being otherwise careless, negligent and reckless in the instance.

155.    Corizon's failure to adequately train their agents, servants and employees in the exercise of their employment functions, and their failure to enforce the laws of the United States of America, the State of New York and the Charter, rules and regulations of the City of New York, is evidence of the reckless lack of cautious regard for the rights of the prisoners in their custody and Plaintiff in particular, and exhibited a lack of that degree of due care which prudent and reasonable individuals would show.

156.    Corizon knew or should have known in the exercise of reasonable care, the propensities of their agents, servants and employees, to engage in the wrongful conduct heretofore alleged herein.

157.    Corizon knew or should have known that its policies, customs and practices, as well as their negligent hiring, retention, supervision, training, appointment and promotion of their agents, servants and employees, created an atmosphere where the most prominent offenders felt assured that their most brazen acts of abuse, misconduct and neglect would not be swiftly and effectively investigated and prosecuted.

158.    That the mistreatment and abuse of the plaintiff, as set forth above, was the reasonably foreseeable consequence of said defendants' negligent conduct.

159.    The aforesaid negligence of Corizon in its hiring, retention, supervision, training,

appointment and promotion practices resulted in false disciplinary proceedings being initiated against Plaintiff; Plaintiff being denied and/or delayed medical treatment; the misconduct of the defendant officers being trivialized, minimized and/or covered up; the cause, nature and extent of the plaintiff's injuries being trivialized, minimized and/or covered up; and otherwise deprived the plaintiff of his constitutional, statutory and common law rights.

## SIXTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: NEGLECT AND FAILURE TO PROVIDE MEDICAL TREATMENT

160.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "159", inclusive, of this Complaint, as if same were fully set forth herein.

161.    As set forth above, the defendant officers and Corizon's agents, servants and/or employees, including but not limited to their site directors, physicians, nurses, physician's assistants, therapists, specialists, clinicians, and administrators, knew that Plaintiff had sustained serious and significant physical injuries from the incidents alleged aforesaid.

162.    Plaintiff informed these defendants that he was injured, that he was in a tremendous amount of pain, and that he was experiencing other serious ailments following the subject incidents.

163.    Plaintiff made numerous requests for sick call, transportation to an off-site hospital, and/or examination by a specialist. Said defendants regularly and routinely denied and/or delayed Plaintiff's requests.

164.    The defendant officers are the initial stewards of Plaintiff's access to medical care – possessing, *inter alia*, exclusive or near-exclusive control and decision-making authority as to if, when and how Plaintiff is permitted access to medical care.

165.    Corizon's agents, servants and/or employees, including but not limited to

physicians, nurses, physician's assistants, therapists, clinicians and specialists, were, *inter alia*, personally involved in Plaintiff's medical care, responsible for performing physical examinations of Plaintiff and ordering appropriate tests, responsible for prescribing appropriate medications, responsible for referring Plaintiff for examination and evaluation by a specialist, ensuring Plaintiff receives timely and appropriate follow-up care, and being otherwise cognizant of Plaintiff's medical condition, treatment and needs.

166.    By the aforesaid conduct, these defendants neglected to timely secure the medical attention required for Plaintiff's serious injuries, in a manner that deprived the Plaintiff of his constitutional and statutory rights and perpetuated and exacerbated his physical and mental pain and suffering.

167.    By delaying and/or failing to act, said defendants knowingly disregarded an excessive risk to Plaintiff's health and safety.

168.    Any reasonable person would perceive Plaintiff's medical needs to be important at the time and worthy of treatment.

169.    By the aforesaid conduct, these defendants were negligent, careless and reckless.

170.    As set forth above, the delay and/or denial of access to timely medical care by the defendants was punitive so as to cause the Plaintiff further physical injury, pain and suffering.

171.    As set forth above, the delay and/or denial of access to timely medical care by the defendants was negligent and reckless so as to cause the Plaintiff further physical injury, pain and suffering.

172.    As a direct and proximate result of said defendants' conduct, the plaintiff was caused to sustain further physical, psychological and emotional injuries, pain and suffering.

173.    Corizon was grossly negligent in supervising its physicians, nurses, physician's

assistants, therapists, clinicians and specialists who committed the wrongful acts alleged herein.

174.    The defendants failed to adequately investigate Plaintiff's claims of delayed and/or denied medical care and treatment.

175.    The defendants failed to adopt policies and procedures that would have prevented the delays and/or denials of medical care and treatment alleged herein.

176.    The defendants knew that the pattern of abuse described above existed. Their failure to take measures to curb this pattern of conscious neglect constitutes acquiescence in the known unlawful behavior of its subordinates. The prevalence of these practices and general knowledge of their existence, and the failure of these defendants to take remedial action despite the fact that the aforesaid conduct has been persistently brought to their attention, constitutes deliberate indifference to the rights and safety of Plaintiff.

177.    The aforesaid acts of the defendants, their agents, servants and/or employees, were sufficiently serious to constitute violations of Plaintiff's statutory, civil and common law rights secured by the Constitution of the State of New York, as well as the New York Health Law, New York Corrections Law, New York Human Rights Law, New York Executive Law, and the common law of New York, and directly and proximately damage the claimant.

178.    As a result of the foregoing, Plaintiff suffered severe and serious physical, psychological and emotional injuries, pain and suffering.

**SEVENTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:**
**INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

179.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "178", inclusive, of this Complaint, as if same were fully set forth herein.

180.    The aforesaid acts of the defendant officers and Corizon's agents, servants and

employees, acting individually and/or in conjunction with each other, were intentional, malicious and excessive, and served no reasonable or legitimate penological interest.

181.    The aforesaid acts of the defendant officers and Corizon's agents, servants and employees, acting individually and/or in conjunction with each other, were negligent and served no reasonable or legitimate penological interest.

182.    These defendants' intentional, reckless and/or negligent infliction of emotional and mental distress constituted misconduct of an egregious and outrageous nature that exceeds all bounds usually tolerated by society and unreasonably endangered Plaintiff's physical safety.

183.    As a result of the foregoing, Plaintiff suffered severe and serious physical, psychological and emotional injuries, pain and suffering, and disability from his usual and customary activities.

## EIGHTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: FRAUD

184.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "183" inclusive, of this Complaint, as if same were fully set forth herein.

185.    As set forth above, Commissioner Ponte and the defendant officers did knowingly draft and file official reports, including but not limited to use of force reports, investigation reports, search reports and injury reports that contained material misrepresentations of fact in (a) why use of force was required; (b) how the underlying incident began; (c) how the underlying incident escalated to the level that force was used; (d) the manner in which an injury was sustained; (e) the cause of the injury; (f) the extent of the injury; (g) the instrumentalities used during the use of force; (h) whether the plaintiff was offered, received or declined medical care and/or follow-up medical care; (i) the manner and level of resistance purportedly offered by

Plaintiff; and (j) the condition and manner in which the plaintiff was presented to the defendant healthcare workers.

186.    As set forth above, the defendant officers did knowingly give false sworn statements in an effort to mitigate, conceal and/or cover-up their own misconduct.

187.    As set forth above, Corizon, its agents, servants and employees, including but not limited to the defendant healthcare workers, did knowingly draft and file official reports, including but not limited to medical reports and injury reports that contained material misrepresentations of fact in how an injury was sustained, the cause of the injury, the extent of the injury, the manner in which the injury was diagnosed and treated, the condition and manner in which the injured individual presented to the healthcare worker(s), and whether the injured individual was offered, received or declined medical care and/or follow-up medical care.

188.    As set forth above, Corizon, its agents, servants and employees, including but not limited to the defendant healthcare workers, did knowingly give false sworn statements in an effort to mitigate, conceal and/or cover-up their own misconduct as well as the defendant officers' misconduct.

189.    As a result of the foregoing, Plaintiff's constitutional, statutory and common law rights were violated, he received inadequate and incomplete medical care, he was issued disciplinary infractions predicated upon and supported by said defendants' false reports, and he was subjected to disciplinary proceedings where he was invariably found guilty and punished following a spurious hearing.

### NINTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
### FAILURE TO PROTECT
_____

190.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs

"1" through "189" inclusive, of this Complaint, as if same were fully set forth herein.

191.     As set forth above, Commissioner Ponte, the defendant officers and Corizon's agents, servants and employees failed to protect Plaintiff from known and foreseeable harms, including themselves and each other.

192.     As set forth above, these defendants caused and created the dangerous conditions which gave rise to the incidents and injuries alleged herein.

193.     As set forth above, Commissioner Ponte and each of the defendant officers and Corizon's agents, servants and employees failed to intervene, mitigate and/or stop the subject incidents at any time during the happening of the incidents.

194.     As set forth above, these defendants knew of and consciously disregarded excessive risks to Plaintiff's security, health and safety.

195.     That due to said defendants' repeated failures to protect the plaintiff, he suffered and continues to suffer severe and serious physical, psychological and emotional injuries, pain and suffering, and disability from his usual and customary activities.

## TENTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: PRIMA FACIE TORT

_____

196.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "195" inclusive, of this Complaint, as if same were fully set forth herein.

197.     The aforesaid conduct of Commissioner Ponte, the defendant officers and Corizon's agents, servants and employees, as well as their delay and failures to act, caused harm to be inflicted upon the plaintiff out of disinterested malevolence and were the proximate cause of the injuries and damages suffered by the plaintiff.

198.     As a result of the foregoing, Plaintiff suffered and continues to suffer severe and

serious physical, psychological and emotional injuries, pain and suffering, and disability from his usual and customary activities.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues in this matter.

## **RELIEF**

Plaintiff requests compensatory damages against all defendants in an amount to be determined at trial, punitive damages against the non-municipal defendants in an amount to be determined at trial, attorney's fees, costs and disbursements pursuant to law, and such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
     December 17, 2015

<div style="margin-left: 50%;">

Yours, etc.,

**HELD & HINES, L.L.P.**


_____/s/_____
By: Philip M. Hines, Esq.
*Attorneys for Plaintiff*
Office and P.O. Address
2004 Ralph Avenue
Brooklyn, New York 11234
(718) 531-9700

</div>

## <u>ATTORNEY VERIFICATION</u>

PHILIP M. HINES, an attorney duly licensed to practice in the courts of the State of New York, hereby affirms the following under penalties of perjury:

That I am a member of the law firm of HELD & HINES, L.L.P., attorneys for the plaintiffs in the within action; that I have read the foregoing VERIFIED COMPLAINT and know the contents thereof; and that the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters, I believe them to be true. The reason this Verification is made by me and not by the plaintiff is that said plaintiff resides outside of the County in which the Affirmant's office is located.

The grounds of my belief as to all matters stated upon my own knowledge are as follows: the records, reports, contracts, and documents contained in the plaintiff's file.


_____/s/_____
PHILIP M. HINES, ESQ.

Affirmed to this 17th
day of December, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
TAMEL DIXON,

                                           Docket No. 15 CV 850 (AT)(AP)

                    Plaintiff,

      -against-

CITY OF NEW YORK, et al.,

                    Defendants.
--------------------------------------------------------------------X

## AMENDED VERIFIED COMPLAINT

**HELD & HINES, LLP**
**Attorneys for Plaintiff**
**Office & Post Office Address**
**2004 Ralph Avenue**
**Brooklyn, New York 11234**
**(718) 531-9700**

                        **Signature (Rule 130-1.1-a)**

                    _____/s/_____

                    **PHILIP M. HINES, ESQ.**