UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TAMEL DIXON,

                        Plaintiff,

              -against-

CORRECTION OFFICER RICHARD AGBAI,

                    Defendant.

:
:        15 Civ. 850 (AT) (AJP)
:        **REPORT AND RECOMMENDATION**
:
:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Analisa Torres, United States District Judge:**

        This action was settled as to all defendants except Richard Agbai, who defaulted. (See Dkt. No. 63.)  Judge Torres entered a default judgment against Agbai on February 16, 2016, and referred this matter to me for a damages inquest.  (Dkt. Nos. 65, 66.)  Dixon submitted his request for damages, attorneys' fees and costs on May 16, 2016.  (Dkt. No. 76: Dixon Br.)  Agbai did not respond.  For the reasons set forth below, the Court should enter judgment for Dixon against Agbai in the amount of $400,000 in compensatory and punitive damages, and $32,663.50 in attorneys' fees and costs.

**FACTS**

        Dixon was in the custody of the New York City Department of Correction ("DOC") from February 15, 2012 through April 29, 2013; Agbai was employed as a DOC correction officer during that time.  (Dkt. No. 45: Dixon Am. Compl. ¶¶ 29, 45.)  On June 16, 2012, Agbai and two other DOC officers assaulted Dixon, and Agbai kicked Dixon in the head while he was on the ground handcuffed behind his back.  (Compl. ¶¶ 52-53.)  Agbai admitted during a subsequent

disciplinary hearing that he had "'stomped [Dixon's] head,'" "'kicked [Dixon's] head into the floor'" and struck Dixon several times in the face while on the floor.  (Compl. ¶ 53; <u>see also</u> Dkt. No. 75: Hines Aff. Ex. F: 11/25/13 ALJ Report at 6.)  Agbai nonetheless "knowingly submitted false and/or misleading use of force and injury reports" about the incident.  (Compl. ¶ 53; <u>see</u> 11/25/13 ALJ Report at 9.)  Dixon lost one tooth, fractured and chipped three others, and suffered a lacerated chin requiring sutures as a result of the assault.  (Dkt. No. 77: Dixon Aff. ¶ 3; <u>see also</u> Compl. ¶ 54; 11/25/13 ALJ Report at 6.)  The Administrative Law Judge ("ALJ") assigned to Agbai's disciplinary hearing found Agbai's "conduct to be deliberate, savage, and reprehensible, for which the only appropriate penalty is termination of his employment . . . ."  (11/25/13 ALJ Report at 9; <u>see also</u> Compl. ¶ 53.)  Agbai's termination was affirmed on appeal.  (Compl. ¶ 53; Hines Aff. Ex. F: 6/3/14 Decision.)

## <u>ANALYSIS</u>

## I.     <u>DEFAULT JUDGMENT PRINCIPLES</u>

Dixon brings multiple claims against Agbai including those under 42 U.S.C. §§1983, 1985 and 1986, a catchall civil rights claim, and pendant state law assault, battery, conspiracy, negligence and intentional infliction of emotional distress claims.  (<u>See generally</u> Dkt. No. 45: Am. Compl.)  By entering default judgment, Judge Torres found that Agbai's liability had been established as a matter of law.  (Dkt. No. 65: 2/16/16 Default Judgment.)  <u>See</u>, <u>e.g.</u>, <u>Bricklayers & Allied Craftworkers Local 2</u> v. <u>Moulton Masonry & Constr., LLC</u>, 779 F.3d 182, 187 (2d Cir. 2015) ("A court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment.  Rather, the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true.").

The Court, however, recommends awarding Dixon damages only on his section 1983 claim, which will sufficiently compensate him for his harm without resulting in duplicative relief. Dixon seeks compensatory damages, punitive damages and attorneys' fees (Dkt. No. 76: Dixon Br. at 1)–all of which are available in a successful action under section 1983.  See, e.g., Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 307, 106 S. Ct. 2537, 2543 (1986) ("compensatory damages [under section 1983] may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation . . . , personal humiliation, and mental anguish and suffering") (quotations omitted); Wilson v. Aquino, 233 F. App'x 73, 77 (2d Cir. 2007) ("Punitive damages are available in a § 1983 action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.") (quotations omitted); 42 U.S.C. § 1988(b) ("In any action . . . to enforce a provision of [section 1983] . . . the court . . . may allow the prevailing party . . . a reasonable attorney's fee . . . .").  The Court thus need not address Dixon's remaining claims.  See, e.g., Colon v. City of N.Y., No. 09 CV 0008, 2012 WL 691544 at *10 (E.D.N.Y. Feb. 9, 2012) ("Plaintiffs have also alleged various claims under New York State law against the defaulting defendants, including . . . assault, battery, . . . and intentional infliction of emotional distress.  However, since the measure of damages is the same under Section 1983 and under the state law claims, and since the Court finds the measure of damages under Section 1983 sufficient to compensate plaintiffs for their injuries, the Court has not addressed plaintiffs' state law claims."), R. & R. adopted, 2012 WL 686878 (E.D.N.Y. Mar. 2, 2012).

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 189 (2d Cir. 2015)

(quotations & alteration omitted).  "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence."  Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012).  Thus, while a court in its discretion may conduct a hearing to assess damages, it is not required to do so if adequate evidentiary support exists for the damages award.  Id.; see also Fed. R. Civ. P. 55(b)(2)(B) ("The court may conduct hearings . . . [when] it needs to . . . determine the amount of damages.").

## II.     COMPENSATORY DAMAGES

### A.     Legal Standards

Common law tort principles generally determine the appropriate level of damages for a violation of a plaintiff's constitutional rights in a section 1983 action.  Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 306, 106 S. Ct. 2537, 2542 (1986); see, e.g., Rehberg v. Paulk, 132 S. Ct. 1497, 1502 (2012) ("Despite the broad terms of § 1983, this Court has long recognized that the statute was not meant to effect a radical departure from ordinary tort law . . . ."); Townes v. City of N.Y., 176 F.3d 138, 146 (2d Cir.), cert. denied, 528 U.S. 964 , 120 S. Ct. 398 (1999); Bermudez v. City of N.Y., 11 Civ. 750, 2014 WL 11274759 at *6 (S.D.N.Y. Mar. 25, 2014) ("Section 1983 civil actions rely on the same analysis as state common law tort actions and serve the same primary goal of compensation.").  "Under general tort principles, compensatory damages are designed to place the plaintiff in a position substantially equivalent to the one that he would have enjoyed had no tort been committed."  Anderson Grp., LLC v. City of Saratoga Springs, 805 F.3d 34, 52 (2d Cir. 2015).  Compensatory damages may "include damages for pain, suffering, and other emotional harms,"  Garland-Sash v. Lewis, 348 F. App'x 639, 642 (2d Cir. 2009), along with monetary harms

such as out-of-pocket losses, Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. at 307, 106 S. Ct. at

2543.  Awarding such damages, which are "grounded in determinations of plaintiffs' actual losses,"

serves section 1983's basic purpose of compensating a plaintiff for his proven injuries.  Memphis

Cmty. Sch. Dist. v. Stachura, 477 U.S. at 307, 106 S. Ct. at 2543; see also, e.g., State Farm Mut.

Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416, 123 S. Ct. 1513, 1519 (2003) ("Compensatory

damages 'are intended to redress the concrete loss that the plaintiff has suffered by reason of the

defendant's wrongful conduct.'"); Farrar v. Hobby, 506 U.S. 103, 112, 113 S. Ct. 566, 573 (1992)

("no compensatory damages may be awarded in a § 1983 suit absent proof of actual injury").

It follows that a plaintiff subjected to excessive force is not entitled to compensatory

damages as a matter of law.  See, e.g., Kerman v. City of N.Y., 374 F.3d 93, 123 (2d Cir. 2004);

Atkins v. N.Y.C., 143 F.3d 100, 103 (2d Cir. 1998); Hyppolite v. Collins, No. 11 CV 588, 2015 WL

2179772 at *3 (D. Conn. May 8, 2015); Dixon v. Ragland, 03 Civ. 826, 2008 WL 5251359 at *7

(S.D.N.Y. Dec. 16, 2008).  "A jury could reasonably find that only nominal damages are appropriate

where, for example, a plaintiff's testimony as to his injuries lacks objective support or credibility,

or where both justified force and unjustified force were used, either of which could have caused his

injuries, or where some of the plaintiff's injuries could have been caused by a codefendant who was

not found to have used excessive force."  Kerman v. City of N.Y., 374 F.3d at 123.  The plaintiff

therefore must "prove that his injuries were proximately caused by the constitutional violation."

Atkins v. N.Y.C., 143 F.3d at 103; see, e.g., Anderson Grp., LLC v. City of Saratoga Springs, 805

F.3d at 52 ("Because compensatory damages are 'intended to redress the concrete loss that the

plaintiff has suffered by reason of the defendant's wrongful conduct,' courts will not permit recovery

when the connection between the claimed loss and the tortious act is speculative or uncertain.")

6

(citation omitted).[1/]  "Once the plaintiff meets this burden, the defendant then bears the risk of uncertainty as to the amount of damages."  Anderson Grp., LLC v. City of Saratoga Springs, 805 F.3d at 53.

The "competent evidence" required to support a damages award may vary depending on the factual circumstances at issue.  Patrolmen's Benevolent Ass'n of City of N.Y. v. City of N.Y., 310 F.3d 43, 55 (2d Cir. 2002), cert. denied, 538 U.S. 1032 , 123 S. Ct. 2076 (2003).  For example, the Second Circuit has established the following guidelines in the context of emotional distress damages:

> A plaintiff's subjective testimony, standing alone, is generally insufficient to sustain an award of emotional distress damages.  Rather, the plaintiff's testimony of emotional injury must be substantiated by other evidence that such an injury occurred, such as the testimony of witnesses to the plaintiff's distress, or the objective circumstances of the violation itself.  Evidence that a plaintiff has sought medical treatment for the emotional injury, while helpful, is not required . . . [nor are] physical symptoms of emotional distress.

Id. at 55-56 (citations omitted); see also, e.g., Norwood v. Salvatore, No. 12-CV-1025, 2016 WL 1060299 at *14 (N.D.N.Y. Mar. 15, 2016); Salem v. Maroc, 15 Civ. 5909, 2016 WL 1717219 at *5 (S.D.N.Y. Apr. 28, 2016).  The decision whether to award such damages thus will often involve "not only determinations of fact but also the consideration of subjective and intangible factors properly left to the sound discretion of the factfinder, here the court."  Cowan v. Prudential Ins. Co. of Am., 852 F.2d 688, 690 (2d Cir. 1988).

---

[1/]     See also, e.g., Townes v. City of N.Y., 176 F.3d at 146 ("A § 1983 action, like its state tort analogs, employs the principle of proximate causation."); Estate of Mauricio Jaquez v. Flores, 10 Civ. 2881, 2016 WL 1084145 at *5 (S.D.N.Y. Mar. 17, 2016); Beard v. Town of Monroe, No. 13 CV 1714, 2015 WL 8023632 at *11 (D. Conn. Dec. 4, 2015); Carmichael v. City of N.Y., 34 F. Supp. 3d 252, 268 (E.D.N.Y. 2014).

### B.   Dixon Should Be Awarded $250,000 in Compensatory Damages

Agbai admitted that he repeatedly kicked Dixon in the head while Dixon was handcuffed on the ground.  (See pages 1-2 above.)  The disciplinary hearing ALJ recommended Agbai's termination given his "deliberate" and "savage" conduct.  (See page 2 above.)  The record supports a determination that Agbai's excessive force proximately caused Dixon's injuries.

Competent evidence supports a damages award against Agbai.  Dixon lost a tooth, damaged multiple other teeth and sustained a chin laceration requiring sutures as a result of the assault.  (See page 2 above.)  Dixon has attached photos of his missing tooth and medical records documenting his injuries.  (Dkt. No. 75: Hines Aff. Ex. D: Medical Records; Hines Aff. Ex. E: Photographs.)  Notes from Dixon's June 18, 2012 dental examination state:

> Pt states trauma to face a few days ago. . . .   Exam reveals chipped tooth #7 mesial/incisal edges.  Exam reveals chipped tooth #8 incisal edge.  Exam reveals tooth #9 fractured to the cervical neck length of the root.  Exam reveals chipped tooth #10 mesial/incisal edges. . . .  Pt referred to Oral Surgery for extraction consult root length tooth #9.

(Hines Aff. Ex D: Medical Records: 6/18/12 Notes.)  Dixon was scheduled for oral surgery to extract his damaged #9 tooth several times between June 20, 2012 and September 24, 2012, but each time his appointment was rescheduled.  (Hines Aff. Ex D: Medical Records: 6/20/12 Notes, 8/1/12 Notes, 8/15/12 Notes, 8/29/12 Notes, 9/5/12 Notes, 9/24/12 Notes.)

After his release from custody, Dixon was treated by Richard Rosen, D.D.S., who bonded Dixon's damaged #8 tooth, and has agreed to replace Dixon's missing tooth (#9) with a surgical implant.  (Dkt. No. 77: Dixon Aff. ¶¶ 4-6; Dkt. No. 78: Rosen Aff. ¶¶ 3-7.)  Dixon states that his injuries cause him "difficulty eating hot and cold foods, drinking hot and cold beverages, biting, chewing, and talking."  (Dixon Aff. ¶ 7.)  Dr. Rosen believes that, "while [Dixon's] physical appearance will improve upon completion of the treatment plan, he will continue to have difficulty

eating hard or tough foods, sensitivity to hot and cold foods and liquids, will never be returned to his prior dental condition, and will require future dental care as the condition of the bonded and implanted teeth will deteriorate over time."  (Rosen Aff. ¶ 12.)  Along with his physical injuries, Dixon "became depressed, anxious, feared for [his] life and safety at the hands of correction officers, and [has] had nightmares and flashbacks."  (Dixon Aff. ¶ 8.)  Dixon's out-of-pocket dental expenses are $19,000.  (Rosen Aff. ¶¶ 8-10.)

Dixon seeks $350,000 in compensatory damages for his "conscious pain and suffering, loss of enjoyment of life, and emotional damages" caused by Officer Agbai's assault. (Dkt. No. 76: Dixon Br. at 7-8.)  Dixon should be awarded compensatory damages for his monetary losses (i.e., dental costs) and emotional harm, but not his requested $350,000.

While the calculation of damages is within the province of the fact finder, there exists "an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable men may differ, but a question of law."  Stampf v. Long Island R.R. Co., 761 F.3d 192, 204 (2d Cir. 2014) (quotations omitted).  The determination of whether a damages award is excessive "'should not be made in a vacuum,' but should include consideration of the amounts awarded in other, comparable cases."  Mathie v. Fries, 121 F.3d 808, 813 (2d Cir. 1997) (citation omitted).[2]  A court is not limited to a review of section 1983 cases and should look to similar state law cases as well.  See, e.g., Ismail v. Cohen, 899 F.2d 183, 186 (2d Cir. 1990).  An appropriate

---

[2]    See also, e.g., Scala v. Moore McCormack Lines, Inc., 985 F.2d 680, 684 (2d Cir. 1993) ("In determining whether a particular award is excessive, courts have reviewed awards in other cases involving similar injuries, 'bearing in mind that any given judgment depends on a unique set of facts and circumstances.'"); Newton v. City of N.Y., 07 Civ. 6211, 2016 WL 1071105 at *14 (S.D.N.Y. Mar. 17, 2016); Genovese v. Cty. of Suffolk, 128 F. Supp. 3d 661, 678 (E.D.N.Y. 2015); Guzman v. Jay, 303 F.R.D. 186, 197 (S.D.N.Y. 2014).

damages award generally should fall "within a reasonable range" of comparable awards.  DiSorbo

v. Hoy, 343 F.3d 172, 183 (2d Cir. 2003).

      In addition to the cases cited by Dixon (Dixon Br. at 8-9), the Court has surveyed

compensatory damages awards in other comparable excessive force cases, including the following:[3]

- Hygh v. Jacobs, 961 F.2d 359, 361, 366 (2d Cir. 1992) (affirming $216,000 award where officer struck plaintiff with a blunt object that "fractured his cheekbones, and [required] plastic surgery under general anesthesia" leaving him with "permanent nerve damage")

- Blissett v. Coughlin, 66 F.3d 531, 533-34, 536 (2d Cir. 1995) (affirming $75,000 award where plaintiff was assaulted by multiple prison guards who struck plaintiff in the head with a baton, punched and kicked him, and choked him until he lost consciousness)

- Morales v. City of N.Y., 99 Civ. 10004, 2001 WL 8594 at *7-10 (S.D.N.Y. Jan. 2, 2001) (reducing $2,750,000 award to $50,000 where plaintiff suffered bruises on her legs and arm that required no serious medical treatment, "she could not identify the specific sources of her bruises . . .[,] did not describe any force being used wantonly, maliciously, or even unnecessarily . . .[,] did not remember being punched, struck, or hit with any object" and her emotional suffering including post traumatic stress disorder "was due principally to the arrest itself, rather than to the use of force during the arrest")

- DiSorbo v. Hoy, 343 F.3d at 179, 185-86 (reducing $400,000 award to $250,000 where plaintiff "had two large hematomas on her head," bruises throughout her upper body, "[p]ressure point bruises . . . on the top of her neck and behind her ear [that] were consistent with" being choked, and "bruises of various sizes on [her] head, right forehead, mandible, right shoulder, hands, left elbow, spine, and the area behind her left ear" but "[n]one of these injuries required surgery nor did any result in permanent scarring or nerve damage")

- Ziemba v. Armstrong, 433 F. Supp. 2d 248, 252-55 (D. Conn. 2006) (upholding $100,000 award where officer punched restrained plaintiff in the face, pressed plaintiff's face down onto a solid steel bed, pressed his knee into plaintiff's back and

---

[3]    The Court notes that it has considered all of the awards at their present dollar value adjusted for inflation using the calculator provided by the U.S. Bureau of Labor Statistics.  See Consumer Price Index Inflation Calculator, U.S. DEP'T OF LABOR, BUREAU OF LABOR STATISTICS,  http://www.bls.gov/data/inflation_calculator.htm (last visited June 13, 2016). The amounts listed, however, are those actually awarded in each case.

used a "nerve compression technique that involved digging his thumb into [plaintiff's] head just behind his ear")

- Lewis v. City of Albany Police Dep't, 547 F. Supp. 2d 191, 203, 206-09 (N.D.N.Y. 2008) (upholding $65,000 award where plaintiff was on the ground in handcuffs and officer stepped on plaintiff's head "with his full weight and ground plaintiff's face into the pavement" causing "abrasions and a contusion to his face and a closed head injury" as well as "headaches, difficulty sleeping, and nightmares for months"), aff'd, 332 F. App'x 641 (2d Cir.), cert. denied, 558 U.S. 1050 , 130 S. Ct. 757 (2009)

- Alla v. Verkay, 979 F. Supp. 2d 349, 357-58, 364-65, 377 (E.D.N.Y. 2013) (finding $250,000 award reasonable where plaintiff fractured a facial bone after an officer punched him in the face while handcuffed, causing him continual "pressure headaches," limited jaw function, memory impairment and emotional harm including "a cognitive disorder, major depression, [and] post-traumatic stress disorder")

- Reynolds v. State, 118 A.D.3d 1496, 1496, 988 N.Y.S.2d 822, 823 (4th Dep't 2014) (affirming award of $225,000 for past pain and suffering and $475,000 for future pain and suffering where plaintiff "suffered a closed head injury and herniated discs in his cervical spine as a result of the assault" by police officers)

- Byrnes v. Angevine, No. 12-CV-1598, 2015 WL 3795807 at *1-3 (N.D.N.Y. June 17, 2015) (awarding $10,000 after inquest where corrections officer placed plaintiff in choke hold and kicked him twice, but plaintiff "suffered no out-of-pocket loss as a result of the incident, failed to present any objective medical documentation to support his claims of residual physical injuries, and acknowledged suffering from pre-existing mental conditions")

- Cardoza v. City of N.Y., 29 N.Y.S.3d 330, 333, 336, 344 (1st Dep't 2016) (awarding $400,000 for past pain and suffering and $1,250,000 for future pain and suffering where officer pepper sprayed plaintiff and struck him multiple times with a baton that fractured his hand, required surgery and caused permanent damage, and further resulted in post-traumatic stress disorder and major depressive disorder)

The following cases also are helpful because they involve facial injuries:

- Rathbun v. Walker, 114 A.D.2d 716, 716-17, 494 N.Y.S.2d 527, 528-29 (3d Dep't 1985) (upholding $100,000 award, reduced to $50,000 due to plaintiff's contributory fault, where due to a car accident "plaintiff sustained a fracture to his upper left jaw, the loss of five teeth, a laceration of the lower lip and a deviated septum" as well as "an oral fistula and a nasal airway obstruction")

- Sorensen v. Nazarian, 175 A.D.2d 417, 418-19, 572 N.Y.S.2d 485, 486-87 (3d Dep't 1991) (upholding $150,000 award for past pain and suffering and $50,000 for future

pain and suffering where plaintiff fractured his jaw and lost five teeth after car accident)

- Murphy v. Lewry, 235 A.D.2d 968, 968-70, 653 N.Y.S.2d 417, 418-19 (3d Dep't 1997) (upholding $3,000 in past and future pain and suffering damages where plaintiff suffered a nasal fracture and lost four teeth in a car accident given that "the evidence, particularly plaintiff's own testimony, was quite unremarkable with respect to the extent of pain and suffering actually experienced as a result of these injuries")

- Eun Hee Choi v. Kim, 06 Civ. 2740, 2009 WL 1074768 at *2-3, 6-7 (S.D.N.Y. Apr. 21, 2009) (awarding $350,000 on inquest where plaintiff was assaulted and suffered cracks in four teeth that required long-term dental care including root canal therapy and underwent "15 sessions of psychotherapy to address PTSD")

- Love v. Rockwell's Int'l Enters., LLC, 83 A.D.3d 914, 914-16, 922 N.Y.S.2d 131, 132-33 (2d Dep't 2011) (reducing $250,000 pain and suffering award to $175,000 where plaintiff's face was shoved against a brick wall causing him to break his jaw)

- Killon v. Parrotta, 125 A.D.3d 1220, 1220, 1222-23, 6 N.Y.S.3d 153, 155, 157-58 (3d Dep't 2015) (ordering increase of awards for past pain and suffering to $200,000 and future pain and suffering to $150,000 where plaintiff was hit in the face with a metal bat and had to undergo a tracheotomy to repair his "shattered mandible and open" mouth fracture, leading to recurring infections and "seven more procedures to clean the area, remove teeth, [and] remove bone fragments" with future surgeries likely)

The cited cases exist on a spectrum: some involve serious injuries accompanied by permanent physical and emotional harm, while others involve more superficial injuries with little evidence to support any lasting damage.  Placing Dixon's case along that spectrum is challenging given the unique factual circumstances each case presents, although certain distinguishing factors are evident.  For example, cases such as Rathbun v. Walker, 114 A.D.2d at 716-17, 494 N.Y.S.2d at 528-29, and Sorensen v. Nazarian, 175 A.D.2d at 418-19, 572 N.Y.S.2d at 486-87, involve arguably more serious injuries than Dixon's, but lack the element of deliberate conduct present in this case.  The circumstances of Dixon's attack are more extreme than the facts of Ziemba v. Armstrong, 433 F. Supp. 2d at 252-55, Lewis v. City of Albany Police Dep't, 547 F. Supp. 2d at 203, 206-09, and Morales v. City of N.Y., 99 Civ. 10004, 2001 WL 8594 at *7-10, but, at least in terms

of resulting injuries, less so than those of <u>Killon</u> v. <u>Parrotta</u>, 125 A.D.3d at 1222-23, 6 N.Y.S.3d at 157-58.  More representative of Dixon's case are <u>Alla</u> v. <u>Verkay</u>, 979 F. Supp. 2d at 357-58, 364-65, 377, and <u>Eun Hee Choi</u> v. <u>Kim</u>, No. 06 Civ. 2740, 2009 WL 1074768 at *2-3, 6-7, since they involve plaintiffs who sustained facial injuries similar to Dixon's in terms of severity, caused by defendants who acted with malice.

After considering Agbai's assault on Dixon within the context of comparable cases, the Court recommends that Dixon be awarded $250,000 in compensatory damages for his pain, suffering and dental expenses.  Dixon's beating left him with serious damage to his teeth that will continue to cause him difficulty eating and involve future dental care.  (<u>See</u> pages 7-8 above.)  Dr. Rosen opined that Dixon will "never be returned to his prior dental condition,"  and thus his injuries are to some degree permanent.  (<u>See</u> page 8 above.)  Although Dixon evidently has not sought treatment for his psychological or emotional injuries, he should be awarded damages for his depression, anxiety, fear, nightmares and flashbacks based on the objective circumstances of the assault.  <u>See</u> <u>Patrolmen's Benevolent Ass'n. of City of N.Y.</u> v. <u>City of N.Y.</u>, 310 F.3d 43, 55 (2d Cir. 2002); <u>see</u> page 6 above.  The recommended award, which is well within the range of compensatory damages in comparable cases, will adequately compensate Dixon for his injuries.

## III.   **PUNITIVE DAMAGES**

### A.   **Legal Standards**

Punitive damages are available "in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  <u>Smith</u> v. <u>Wade</u>, 461 U.S. 30, 56, 103 S. Ct.

1625, 1640 (1983).[4/]  A jury may appropriately award punitive damages where the "character of the tortfeasor's conduct . . . is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards."  Smith v. Wade, 461 U.S. at 54, 103 S. Ct. at 1639.  A plaintiff must show a "'positive element of conscious wrongdoing'" by the defendant.  New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 121 (2d Cir. 2006); see also, e.g., Cameron v. City of N.Y., 598 F.3d 50, 69 (2d Cir. 2010).

There is no formula or objective standard that courts use to calculate punitive damages awards, which "are by nature speculative, arbitrary approximations."  Payne v. Jones, 711 F.3d 85, 93 (2d Cir. 2013).  Even so, courts bear a duty to ensure that such awards are fair and reasonable, as punitive damages may result in a windfall to a plaintiff fully compensated for his actual losses.  Id. at 93-95.[5/]

The Supreme Court has established three guideposts to help determine the reasonableness of a punitive damages award: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the plaintiff's harm and the punitive damages award; and (3) the difference between the award and the criminal and civil penalties for the misconduct at issue.  BMW

---

[4/]   See also, e.g., Wilson v. Aquino, 233 F. App'x 73, 77 (2d Cir. 2007); Kenney v. Clay, No. 11-CV-790, 2016 WL 1156747 at *7 (N.D.N.Y. Mar. 23, 2016); Deanda v. Hicks, 137 F. Supp. 3d 543, 579 (S.D.N.Y. 2015).

[5/]   See also, e.g., State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419, 123 S. Ct. 1513, 1521 (2003) ("It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence."); Lang v. Town of Tusten, N.Y., 14 Civ. 4136, 2015 WL 5460110 at *9 (S.D.N.Y. Aug. 6, 2015) ("[T]he allegations regarding defendants' conduct plainly do not rise to the level of evil motive or intent, and any potential award of compensatory damages would be sufficient to achieve punishment and deterrence.").

14

of N. Am., Inc. v. Gore, 517 U.S. 559, 575, 116 S. Ct. 1589, 1598-99 (1996).[6/]  As with compensatory damages (see page 8 above), the Second Circuit has further "found it helpful in deciding whether a particular punitive award is excessive to compare it to court rulings on the same question in other cases." Payne v. Jones, 711 F.3d at 104; see also, e.g., Lee v. Edwards, 101 F.3d 805, 812 (2d Cir. 1996) ("To sort this out, it is appropriate for us to examine punitive damage awards in similar cases."); Ismail v. Cohen, 899 F.2d 183, 187 (2d Cir. 1990).

### B.     Dixon Should Be Awarded $150,000 in Punitive Damages

Dixon seeks $250,000 in punitive damages given Agbai's "outrageous and reckless disregard" for his safety and civil rights.  (Dkt. No. 76: Dixon Br. at 11.)  While an award of punitive damages is warranted here, after consideration of the Gore factors and other comparable punitive awards, the Court concludes that $150,000 is a more appropriate amount, for the reasons that follow.

---

[6/]     Accord, e.g., State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. at 418, 123 S. Ct. at 1520; Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 165 (2d Cir. 2014); Payne v. Jones, 711 F.3d at 101; DiSorbo v. Hoy, 343 F.3d 172, 186 (2d Cir. 2003); Cabral v. City of N.Y., 12 Civ. 4659, 2015 WL 4750675 at *6 (S.D.N.Y. Aug. 11, 2015); Lashley v. New Life Bus. Inst., Inc., No. 13 CIV. 2683, 2015 WL 1014128 at *9 (E.D.N.Y. Mar. 9, 2015).

"Although Gore examined the excessiveness of punitive damages awarded in a state court, the universal premise of [the] Supreme Court's due process reasoning suggests that the same considerations apply equally to the review of punitive damages awarded in federal court." Lee v. Edwards, 101 F.3d 805, 809 n.2 (2d Cir. 1996); see also, e.g., Stampf v. Long Island R.R., 761 F.3d 192, 209 (2d Cir. 2014) ("[T]he Court's guideposts set forth in Gore provide a useful framework for reviewing federal district court punitive damages awards."); Payne v. Jones, 711 F.3d at 101 n.13 ("While a greater degree of excessiveness is required to violate the Constitution than to justify remittitur under the supervisory power of the federal appellate courts over federal trial courts, we have no reason to think the guideposts indicated by the Supreme Court [in Gore] for the constitutional inquiry are not also pertinent for this inquiry."); Patterson v. Balsamico, 440 F.3d 104, 120 n.10 (2d Cir. 2006) ("Although Gore was a case involving the limits imposed by the Fourteenth Amendment on state courts awarding punitive damages, this Court has recognized that the principles announced in Gore are equally applicable to our review of punitive damages awarded in a federal district court.").

### 1.    The Reprehensibility of Agbai's Conduct

"Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct."  BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 575, 116 S. Ct. 1589, 1599 (1996).[7]  An award of punitive damages should reflect the severity of the defendant's offense.  See BMW of N. Am., Inc. v. Gore, 517 U.S. at 575, 116 S. Ct. at 1599; see also, e.g., Cotto v. City of Middletown, No. 10-CV-560, 2016 WL 223692 at *16 (D. Conn. Jan. 19, 2016) ("Gore instructs that the mere fact that tort liability should be imposed does not mean that substantial punitive damages are also warranted.").  The concept of proportionality "reflects the accepted view that some wrongs are more blameworthy than others."  BMW of N. Am., Inc. v. Gore, 517 U.S. at 575, 116 S. Ct. at 1599.  When gauging a defendant's conduct, courts should consider whether

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; [or] the harm was the result of intentional malice, trickery, or deceit, or mere accident.

State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. at 419, 123 S. Ct. at 1521.[8]  "The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive

---

[7]    See also, e.g., State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419, 123 S. Ct. 1513, 1521 (2003); Mariangelica Vera v. Alstom Power, Inc., No. 12-CV-00382, 2016 WL 3014614 at *13 (D. Conn. May 24, 2016); Bouveng v. NYG Capital LLC, 14 Civ. 5474, 2016 WL 1312139 at *52 (S.D.N.Y. Mar. 31, 2016).

[8]    See also, e.g., Stampf v. Long Island R.R., 761 F.3d 192, 209 (2d Cir. 2014) ("[C]onduct that could cause serious physical or emotional injury is more reprehensible than conduct that risks only minor injuries or economic damages."); Lee v. Edwards, 101 F.3d 805, 809 (2d Cir. 1996) ("Aggravating factors include (1) whether a defendant's conduct was violent or presented a threat of violence, (2) whether a defendant acted with deceit or malice as opposed to acting with mere negligence, and (3) whether a defendant has engaged in repeated instances of misconduct.").

damages award; and the absence of all of them renders any award suspect." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. at 419, 123 S. Ct. at 1521.

Agbai's conduct was highly reprehensible; his actions were violent, malicious and caused Dixon physical and emotional harm. Agbai deliberately kicked Dixon in the head multiple times during the course of the assault, damaging three of his teeth and knocking another out entirely. (See pages 1-2 above.) As a correction officer, Agbai maintained a position of power over inmates and assaulted Dixon when he was handcuffed in a prone position, making this case all the more egregious. "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994). The circumstances of Dixon's assault illustrate the reprehensible nature of Agbai's actions.

## 2. The Disparity Between Compensatory and Punitive Damages

Just as there is no mathematical formula used to calculate punitive damages (see page 13 above), "there are no rigid benchmarks that a punitive damages award may not surpass." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425, 123 S. Ct. 1513, 1524 (2003). "Indeed, low awards of compensatory damages may properly support a higher ratio [of punitive damages] than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages." BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 582, 116 S. Ct. 1589, 1602 (1996).[9/] The award should, however, be proportionate to the harm

---

[9/]    See also, e.g., Exxon Shipping Co. v. Baker, 554 U.S. 471, 494, 128 S. Ct. 2605, 2622 (2008); Payne v. Jones, 711 F.3d 85, 102 (2d Cir. 2013) (The "propriety of the ratio can vary enormously with the particular facts of the case. It is difficult or impossible to make useful generalizations." (citations omitted)); Lee v. Edwards, 101 F.3d 805, 811 (2d Cir. 1996) (holding that "in a § 1983 case in which the compensatory damages are nominal, a much (continued...)

considering that compensatory damages may already contain a "punitive element." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. at 426, 123 S. Ct. at 1524-25.[10/]

"In this case, the punitive damages awarded are a relatively small fraction of the compensatory damages, rather than a multiple thereof, and thus are not disproportionately large by comparison."   Patterson v. Balsamico, 440 F.3d 104, 121 (2d Cir. 2006).[11/]   The Court's recommended punitive award thus is reasonable and proportionate in relation to the compensatory damages and the harm suffered by Dixon.  See State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. at 426, 123 S. Ct. at 1524 ("In sum, courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered.").

---

[9/]    (...continued)
higher ratio can be contemplated"); Medina v. Donaldson, No. 10 Civ. 5922, 2014 WL 1010951 at *17 (E.D.N.Y. Mar. 14, 2014) ("Moreover, the relatively minor nature of Plaintiff's physical injuries does not detract from the reprehensible nature of Defendant's conduct.  The circumstance here where a police officer assaulted a handcuffed arrestee justifies a greater discrepancy between the damages awards.").

[10/]    See also, e.g., Bouveng v. NYG Capital LLC, 14 Civ. 5474, 2016 WL 1312139 at *55 (S.D.N.Y. Mar. 31, 2016); Osorio v. Source Enters., Inc., 05 Civ. 10029, 2007 WL 683985 at *3 (S.D.N.Y. Mar. 2, 2007); RESTATEMENT (SECOND) OF TORTS § 908 cmt. c (1979) ("In many cases in which compensatory damages include an amount for emotional distress, such as humiliation or indignation aroused by the defendant's act, there is no clear line of demarcation between punishment and compensation and a verdict for a specified amount frequently includes elements of both.").

[11/]    See also, e.g., Stampf v. Long Island R.R., 761 F.3d 192, 211 (2d Cir. 2014) ("In any event, the ratio of the jury's award of punitive damages to the compensatory award (as reduced) is 1:1, which does not 'raise a suspicious judicial eyebrow.'"); Knox v. Cty. of Putnam, 10 Civ. 1671, 2014 WL 7330851 at *10 (S.D.N.Y. July 23, 2014), R. & R. adopted, 2014 WL 7330851 (Dec. 23, 2014).

### 3.    <u>Civil and Criminal Penalties</u>

The third <u>Gore</u> factor asks what comparable civil and criminal penalties could be imposed for the misconduct.  <u>BMW of N. Am., Inc.</u> v. <u>Gore</u>, 517 U.S. 559, 583, 116 S. Ct. 1589, 1603 (1996); <u>see also</u>, <u>e.g.</u>, <u>Stampf</u> v. <u>Long Island R.R.</u>, 761 F.3d 192, 211 (2d Cir. 2014); <u>Payne</u> v. <u>Jones</u>, 711 F.3d 85, 103 (2d Cir. 2013); <u>DiSorbo</u> v. <u>Hoy</u>, 343 F.3d 172, 187 (2d Cir. 2003). "When penalties for comparable misconduct are much slighter than a punitive damages award, it may be said that the tortfeasor lacked 'fair notice' that the wrongful conduct could entail a substantial punitive award." <u>Lee</u> v. <u>Edwards</u>, 101 F.3d 805, 811 (2d Cir. 1996).

Under New York law, a person is guilty of second degree assault when he intentionally causes a "serious physical injury" to another, or when he intentionally causes a "physical injury" to another by means of a "dangerous instrument."  P.L. § 120.05(A)(1)-(2).  A "serious physical injury" is one that causes "serious and protracted disfigurement . . . [or] protracted impairment of health," P.L. § 10.00(10), and a "physical injury" means "impairment of physical condition or substantial pain," P.L. § 10.00(9).  "'[B]oots or shoes worn while kicking a victim can constitute a dangerous instrument under the assault statute.'" <u>People</u> v. <u>Hill</u>, 130 A.D.3d 1305, 1306, 13 N.Y.S.3d 705, 707 (3d Dep't 2015), <u>appeal denied</u>, --- N.E.3d ---- (N.Y. Apr. 15, 2016).

Agbai could have been charged with second degree assault.  <u>See</u>, <u>e.g.</u>, <u>People</u> v. <u>Hill</u>, 130 A.D.3d at 1305-06, 13 N.Y.S.3d at 707 ("The victim was pinned to the floor during the assault and sustained further injuries when defendant repeatedly kicked him in the head, neck and chest. Indeed, one eyewitness testified that defendant was 'stomping [the victim] in the head.'"); <u>People</u> v. <u>Baugh</u>, 101 A.D.3d 1359, 1362, 956 N.Y.S.2d 313, 316 (3d Dep't 2012) (affirming conviction for second degree assault where defendant "kicked the victim in the head during the fight that ensued while the victim was on the ground and unable to defend himself"); <u>People</u> v. <u>Nicholson</u>, 97 A.D.3d

968, 969, 948 N.Y.S.2d 465, 467 (3d Dep't 2012) (conviction upheld where the "testimony of the victim and several other witnesses established that defendant forcefully kicked and stomped the victim's head while he was lying helplessly on the ground"); People v. Garris, 196 A.D.2d 724, 724, 602 N.Y.S.2d 10, 11 (1st Dep't 1993) (conviction upheld where evidence against defendant "included the testimony of the victim that defendant repeatedly struck her and kicked her in the head").  Second degree assault is a class D felony, P.L. §§ 120.05, 70.02(1)(c), punishable by two to seven years imprisonment, P.L. § 70.02(3)(c), and a $5,000 fine, P.L. § 80.00(1)(a).  See, e.g., Powell v. Kaplan, No. 12-CV-00954, 2016 WL 2925979 at *5 (W.D.N.Y. May 19, 2016); Ture v. Racette, No. 12-CV-01864, 2014 WL 2895439 at *10 (N.D.N.Y. June 26, 2014); Cornado v. Bellnier, 10 Civ. 5265, 2012 WL 6644637 at *7 (S.D.N.Y. Sept. 20, 2012), R. & R. adopted, 2012 WL 6681692 (S.D.N.Y. Dec. 21, 2012); People v. Delorenzo, 34 A.D.3d 868, 869, 823 N.Y.S.2d 564, 565 (3d Dep't 2006).  That Agbai's actions might be deemed a violent felony in New York weighs in favor of a punitive damages award that reflects the severity of the offense.  The potential criminal penalties for second degree assault, coupled with the obvious reprehensible circumstances of Agbai's attack on Dixon, would have given Agbai fair notice that his conduct could subject him to a substantial punitive damages award.

### 4.  Punitive Awards in Comparable Cases

"Courts have often found it helpful in deciding whether a particular punitive award is excessive to compare it to court rulings on the same question in other cases.  The undertaking is precarious because the factual differences between cases can make it difficult to draw useful comparisons."  Payne v. Jones, 711 F.3d 85, 104-05 (2d Cir. 2013) (citation omitted); see also cases cited at page 14 above.  The following cases provide some useful reference points:

- Mathie v. Fries, 121 F.3d 808, 810-11, 817 (2d Cir. 1997) (reducing punitive award to $200,000 where plaintiff was repeatedly sexually abused by a prison staff member)

- Morales v. City of N.Y., 99 Civ. 10004, 2001 WL 8594 at *7 (S.D.N.Y. Jan. 2, 2001) (eliminating punitive award entirely where, "[a]t most, [defendant] was unnecessarily rough in subduing [plaintiff] as she struggled, and in forcing her into his car" causing the injuries described in section II.B above)

- Blackledge v. Carlone, 126 F. Supp. 2d 224, 225, 228-31 (D. Conn. 2001) (upholding $40,000 punitive award where officer pepper sprayed plaintiff, handcuffed plaintiff behind her back and placed her in back of police cruiser, and then sprayed her again)

- DiSorbo v. Hoy, 343 F.3d 172, 187-89 (2d Cir. 2003) (reducing punitive award to $75,000 where officer "violently slammed [plaintiff] against the wall, choked her to the point where she began to lose vision, pushed her to the ground, and struck her while she was on the ground" causing the injuries described in section II.B above)

- Ziemba v. Armstrong, 433 F. Supp. 2d 248, 255-56 (D. Conn. 2006) (upholding $150,000 punitive award where plaintiff sustained injuries described in section II.B above)

- Lewis v. City of Albany Police Dep't, 547 F. Supp. 2d 191, 209-10 (N.D.N.Y. 2008) (upholding $200,000 punitive award where defendant's "use of excessive force against [plaintiff] was racially motivated and occurred while plaintiff was handcuffed" causing the injuries described in section II.B above), aff'd, 332 F. App'x 641 (2d Cir. 2009)

- Alla v. Verkay, 979 F. Supp. 2d 349, 378-79 (E.D.N.Y. 2013) (upholding $150,000 punitive award based on officer's conduct described in section II.B above that court found "unquestionably qualifies as 'violent'" and noting the award was, "if anything, somewhat conservative")

- Payne v. Jones, 711 F.3d at 88, 106 (reducing punitive award to $100,000 where officer struck plaintiff "in the face and neck seven to ten times and knee[d] him in the back several times" which "aggravated his existing back pain and his post traumatic stress disorder")

- Cardoza v. City of N.Y., 29 N.Y.S.3d 330, 343 (1st Dep't 2016) (reducing punitive award to $75,000 against two officers for a total of $150,000 based on assault described in section II.B above)

Based on this survey of comparable cases, the Court concludes that the recommended $150,000 punitive damages award appropriately accounts for the severity of Agbai's actions without granting Dixon a windfall.  Although Dixon cites punitive awards in several pre-<u>Gore</u> cases that exceed $250,000 when adjusted for inflation (Dkt. No. 76: Dixon Br. at 12-15), the Court questions the usefulness of those cases here.  The Second Circuit has acknowledged that "[t]he <u>Gore</u> decision seems to support an increased judicial readiness to curtail any excessiveness." <u>Payne</u> v. <u>Jones</u>, 711 F.3d at 97; <u>see</u>, <u>e.g.</u>, <u>Mathie</u> v. <u>Fries</u>, 121 F.3d at 817 ("The Supreme Court's guideposts in <u>Gore</u>, though marking outer constitutional limits, counsel restraint with respect to the size of punitive awards even as to the nonconstitutional standard of excessiveness.  We have anticipated and heeded that caution in recent decisions applying section 1983.").[12]  Although the factual circumstances of these pre-<u>Gore</u> cases help to gauge the type of conduct that might warrant a larger or smaller punitive award, the actual dollar figures may not be as defensible today.  Regardless, when considering other punitive awards, the Court cannot lose sight of the principles that justify the imposition of punitive damages in the first place: punishment and deterrence.  <u>See</u>, <u>e.g.</u>, <u>Lee</u> v. <u>Edwards</u>, 101 F.3d 805, 809 (2d Cir. 1996) ("In gauging excessiveness, we must keep in mind the purpose of punitive damages: 'to punish the defendant and to deter him and others from similar

---

[12]     <u>See also</u> Harv. L. Rev. Ass'n, <u>Constitutional Law</u>, 117 HARV. L. REV. 317, 317 (2003) (noting that <u>Gore</u> was decided in response "to a concern that punitive damages were 'run[ning] wild'"); Sabrina C. Turner, The Shadow of BMW of North America, Inc. v. Gore, 1998 WIS. L. REV. 427, 446 (1998) ("The Supreme Court's decision in <u>Gore</u> represents part of a growing movement to regulate punitive damages."); Evan M. Tager, BMW v. Gore, One Year Later: 'The Road to Nowhere' or Meaningful Guidance?, ANDREWS ASBESTOS LITIG. REP. 36484 (1997) ("Language in several of its earlier cases suggests that, even before [<u>Gore</u>], the Court's patience with runaway punitive verdicts was wearing thin.  [<u>Gore</u>] presented the Court with an opportunity to 'send a message' about punitive damages that extends beyond the specifics of that case.  The clear sub-text of the opinion is that lower courts should take seriously their responsibility to constrain runaway jury-imposed punishments.").

conduct in the future.'").   The Court's recommended $150,000 punitive damages award satisfies

these objectives.[13]

## IV.   PREJUDGMENT INTEREST

Dixon should not be awarded prejudgment interest because he made no demand for

it in his complaint.  In addition to compensatory damages, punitive damages, attorneys' fees and

costs, Dixon demands "such other and further relief as this Court deems just and proper."  (Dkt. No.

45: Am. Compl. at 43.)  Such boilerplate language is not a request for prejudgment interest.  See,

e.g., Silge v. Merz, 510 F.3d 157, 158-160 (2d Cir. 2007) (affirming denial of prejudgment interest

where plaintiff sought judgment for a specific amount "'together with costs and disbursements and

such other and further relief which this Court deems just and proper'"); see also, e.g., AOL Inc. v.

Dig. Delivery Networks, Inc., 15 Civ. 6620, 2016 WL 2909117 at *3 (S.D.N.Y. Apr. 29, 2016), R.

& R. adopted, 2016 WL 2889063 (S.D.N.Y. May 17, 2016); Fed. R. Civ. P. 54(c).

---

[13]     The Court acknowledges that Dixon settled this matter as to all defendants except Agbai for
the sum of $100,000.  (Dkt. No. 63: 1/26/16 Order; Dkt. No. 71: 1/25/16 Tr. at 2.)  The
recommended compensatory and punitive damages are based on a consideration of Agbai's
conduct alone, and the harm that Dixon claims was proximately caused by that conduct.
Where "a non-settling defendant seeks a set-off, the burden rests squarely upon it to show
the extent to which a recovery against it would be duplicative of the plaintiff's recovery from
settling defendants.  In choosing not to participate in the litigation, a defaulting party
eschews the opportunity to carry this burden, and therefore does not demonstrate its
entitlement to, or deserve the benefit of, a set-off."  State Farm Mut. Auto. Ins. Co. v.
Grafman, 968 F. Supp. 2d 480, 483 (E.D.N.Y. 2013) (quotations & citation omitted); see
also, e.g., Gov't Emps. Ins. Co. v. David Sanni-Thomas, No. 13-CV-4966, 2015 WL
5692875 at *12 (E.D.N.Y. Sept. 4, 2015) ("Most courts in the Second Circuit, however, have
held that a defendant in default 'may not invoke the benefits of the set-off rule.'"), R. & R.
adopted, 2015 WL 5692899 (E.D.N.Y. Sept. 27, 2015).

V.     **ATTORNEYS' FEES**

      A.     **Dixon Should Be Awarded Attorneys' Fees**

      42 U.S.C. § 1988(b) provides that "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . , the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  A plaintiff who obtained a default judgment is considered "a prevailing party eligible to recover attorney's fees and costs."  See, e.g., Shariff v. Alsaydi, No. 11-CV-6377, 2013 WL 4432218 at *4 (E.D.N.Y. Aug. 15, 2013); DeCurtis v. Upward Bound Int'l, Inc., 09 Civ. 5378, 2013 WL 3270357 at *6 (S.D.N.Y. June 3, 2013); Coal. for Liveable W. Side, Inc. v. N.Y.C. Dep't of Envtl. Prot., 92 Civ. 9011, 1998 WL 299938 at *2 (S.D.N.Y. June 9, 1998).  "The function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel."  Kerr v. Quinn, 692 F.2d 875, 877 (2d Cir. 1982).[14/]  Although § 1988(b) provides that the court may "in its discretion" allow an award of attorneys' fees, that discretion is not unlimited.  Blanchard v. Bergeron, 489 U.S. 87, 89 n.1, 109 S. Ct. 939, 942 n.1 (1989).  The court's "discretion is narrowed by a presumption that successful civil rights litigants should recover reasonable attorney's fees unless special circumstances render such an award unjust."  Raishevich v. Foster, 247 F.3d 337, 344 (2d Cir. 2001).[15/]

---

[14/]    See also, e.g., Thomas v. City of N.Y., 09 Civ. 3162, 2016 WL 319982 at *2 (S.D.N.Y. Jan. 26, 2016); Adusumelli v. Steiner, 08 Civ. 6932, 2013 WL 1285260 at *1 (S.D.N.Y. Mar. 28, 2013); Ueno v. Napolitano, No. 04-CV-1873, 2007 WL 1395517 at *8 (E.D.N.Y. May 11, 2007).

[15/]    See also, e.g., Blanchard v. Bergeron, 489 U.S. at 89 n.1, 109 S. Ct. at 942 n.1; Coe v. Town of Blooming Grove, 880 F. Supp. 2d 411, 416 (S.D.N.Y. 2012); Sugarman v. Vill. of Chester, 213 F. Supp. 2d 304, 307-08 (S.D.N.Y. 2002); N.Y.S. Nat'l Org. for Women v. Terry, 94 F. Supp. 2d 465, 468 (S.D.N.Y. 2000).

A two step test is employed to determine "whether special circumstances make it appropriate to deny attorneys' fees." Raishevich v. Foster, 247 F.3d at 344; see, e.g., Curtis v. City of Kingston, No. 14-CV-0951, 2016 WL 1223471 at *4 (N.D.N.Y. Mar. 28, 2016); Thomas v. City of N.Y., 2016 WL 319982 at *3.  The threshold inquiry asks "whether 'the plaintiff's claim was so strong on the merits and so likely to result in a substantial judgment that counsel in similar cases could be easily and readily retained.'" Raishevich v. Foster, 247 F.3d at 344.[16/]  The court "must determine whether 'attorneys who generally take such cases on a contingent basis would readily appreciate the value of the case and agree to pursue it.'" Raishevich v. Foster, 247 F.3d at 344; see also, e.g., Kerr v. Quinn, 692 F.2d at 878; Cruz v. Henry Modell & Co., No. 05-CV-1450, 2008 WL 905351 at *2 (E.D.N.Y. Mar. 31, 2008).  The test is objective and turns on the "likely response of the bar . . . in light of the posture of the case at the time counsel is sought, not in the light of hindsight." Kerr v. Quinn, 692 F.2d at 878; see also, e.g., Cruz v. Henry Modell & Co., No. 05-CV-1450, 2008 WL 905351 at *2.  When private attorneys can be attracted on a contingency fee basis, "'the underlying rationale of [awarding attorneys' fees] may be inapplicable since no financial disincentive or bar to vigorous enforcement of civil rights may exist.'" Kerr v. Quinn, 692 F.2d at 878; see also, e.g., Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005) (Section "1988 was enacted in part to secure legal representation for plaintiffs whose constitutional injury was too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the case under conventional fee arrangements." (emphasis added)).

---

[16/]     See also, e.g.,  DiFilippo v. Morizio, 759 F.2d 231, 234 (2d Cir. 1985); Curtis v. City of Kingston, 2016 WL 1223471 at *4; Thomas v. City of N.Y., 2016 WL 319982 at *3; Osterweil v. Bartlett, 92 F. Supp. 3d 14, 24 (N.D.N.Y. 2015).

If the first requirement is satisfied, the court "then may use its discretion to deny fees if, 'in light of all of the circumstances and the size of recovery, an award of such fees might work an injustice.'" Raishevich v. Foster, 247 F.3d at 344-45.[17/]  In evaluating whether an attorneys' fees award would work an injustice, courts consider "factors such [as] the award of punitive damages, the amount of the compensatory award, the degree and measurability of the harm to the plaintiff, and the public interest in the particular claim." Raishevich v. Foster,  247 F.3d at 345; see also, e.g., Zarcone v. Perry, 581 F.2d 1039, 1044 (2d Cir. 1978) (court should consider the amount of damages awarded "and its adequacy to cover the plaintiffs' costs and compensate him for actual damages"), cert. denied, 439 U.S. 1072 , 99 S. Ct. 843 (1979).  "Where an award of counsel fees would be something of a windfall to a plaintiff and a significant penalty to a defendant, such an award may be denied." Kerr v. Quinn, 692 F.2d at 878.

Here, Agbai had admitted that he assaulted Dixon before Dixon retained Held & Hines, LLP.  (Compare Dkt No. 75: Hines Aff. Ex. F: 11/25/13 ALJ Report at 9, and 06/03/14 Decision at 2, with Hines Aff. Ex. H: 7/8/14 Time Sheet Entry.)  While the merits of Dixon's claim were strong enough to readily attract counsel, it is not easy for an inmate to convince a jury to award damages against an officer.  Moreover, while the recommended compensatory and punitive damages are substantial, they reflect the severity of Dixon's physical and emotional injuries, and the strong public interest in deterring correction officers from engaging in violent and malicious misconduct. The Court in its discretion recommends that Dixon be awarded attorneys' fees.

---

[17/]   See, e.g., Curtis v. City of Kingston, 2016 WL 1223471 at *4; Thomas v. City of N.Y., 2016 WL 319982 at *3; Syrnik v. Polones Constr. Corp., 11 Civ. 7754, 2012 WL 4122801 at *2 (S.D.N.Y. Sept. 19, 2012); Siracuse v. Program for the Dev. of Human Potential, No. 07-CV-2205, 2012 WL 1624291 at *19 (E.D.N.Y. Apr. 30, 2012).

### B.   Calculating Reasonable Attorneys' Fees

Traditionally, "[i]n determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" <u>Healey</u> v. <u>Leavitt</u>, 485 F.3d 63, 71 (2d Cir. 2007) (citing <u>Hensley</u> v. <u>Eckerhart</u>, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)).[18/]   Particularly in awarding statutory attorneys' fees, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward . . . ." <u>Hensley</u> v. <u>Eckerhart</u>, 461 U.S. at 434, 103 S. Ct. at 1940; <u>see also</u>, <u>e.g.</u>, <u>Arbor Hill Concerned Citizens Neighborhood Ass'n</u> v. <u>Cnty. of Albany</u>, 522 F.3d 182, 186 (2d Cir. 2008) ("[T]he lodestar method involved two steps: (1) the lodestar calculation; and (2) adjustment of the lodestar based on case-specific considerations."); <u>Lane Crawford LLC</u> v. <u>Kelex Trading (CA) Inc.</u>, 12 Civ. 9190, 2013 WL 6481354 at *6 (S.D.N.Y. Dec. 3, 2013) (Peck, M.J.), <u>R. & R. adopted</u>, 12 Civ. 9190, 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014).

In April 2010, the Supreme Court revisited the issue of attorneys' fees and approved of the "lodestar" approach over the more discretionary approach of <u>Johnson</u> v. <u>Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974), holding:

> Although the lodestar method is not perfect, it has several important virtues. First, in accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to "the prevailing market rates in the relevant community." Developed after the practice of hourly billing had become widespread, the lodestar method produces an award that <u>roughly</u> approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. Second, the lodestar method is readily administrable, and unlike the <u>Johnson</u> approach, the lodestar calculation is

---

[18/]   The Second Circuit requires contemporaneous time records as a prerequisite for awarding attorneys' fees. <u>E.g.</u>, <u>N.Y.S. Ass'n for Retarded Children, Inc.</u> v. <u>Carey</u>, 711 F.2d 1136, 1147 (2d Cir. 1983).

"objective," and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.

### III

Our prior decisions concerning the federal fee-shifting statutes have established six important rules that lead to our decision in this case.

First, a "reasonable" fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. . . .

Second, the lodestar method yields a fee that is presumptively sufficient to achieve this objective.  Indeed, we have said that the presumption is a "strong" one.

Third, although we have never sustained an enhancement of a lodestar amount for performance, we have repeatedly said that enhancements may be awarded in "'rare'" and "'exceptional'" circumstances.

Fourth, we have noted that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation.  We have thus held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors "presumably [are] fully reflected in the number of billable hours recorded by counsel."  We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar "[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate."

Fifth, the burden of proving that an enhancement is necessary must be borne by the fee applicant.

Finally, a fee applicant seeking an enhancement must produce "specific evidence" that supports the award.  This requirement is essential if the lodestar method is to realize one of its chief virtues, i.e., providing a calculation that is objective and capable of being reviewed on appeal.

Perdue v. Kenny A., 559 U.S. 542, 551-53, 130 S. Ct. 1662, 1672-73 (2010) (citations omitted).[19]

---

[19]    Although the Supreme Court's Perdue opinion appeared to cast doubt on the viability of the Second Circuit's 2008 opinion in Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d at 190, which relied on, among other factors, the Johnson factors, Arbor Hill remains the standard in this Circuit.  See, e.g., Hui Luo v. L & S Acupuncture, P.C., No. 15-1892-CV, 2016 WL 2848646 at *2 (2d Cir. May 16, 2016); Gortat v. Capala

(continued...)

As the fee applicant, plaintiff "bears the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." General Elec. Co. v. Compagnie Euralair, S.A., 96 Civ. 0884, 1997 WL 397627 at *4 (S.D.N.Y. July 3, 1997) (Scheindlin, D.J. & Peck, M.J.).[20]

Dixon's counsel provided the Court with contemporaneous billing records that specify the date, the amount of time expended, and a description of the services provided.  (Dkt. No. 75: Hines Aff. Ex. H: Time Sheet.)  Counsel also submitted three sample retainer agreements detailing the rates that clients paid at the time his firm was retained.  (Hines Aff. Ex. G: Sample Retainer Agreements.)

## 1.   **Reasonable Hourly Rates**

Dixon is represented by Philip M. Hines of the firm Held & Hines, LLP.  Held & Hines, LLP's fee calculations use a rate of $425 per hour for Hines, who is lead counsel on this case.

---

[19]   (...continued)
Bros., Inc., 621 F. App'x 19, 22 (2d Cir. 2015) (reviewing attorneys' fee award under Arbor Hill and Johnson factors); K.L. v. Warwick Valley Cent. Sch. Dist., 584 F. App'x 17, 18 (2d Cir. 2014) ("In determining an appropriate hourly rate, 'the district court should consider, among others, the Johnson factors.'" (quoting Arbor Hill)); Torres v. Gristede's Operating Corp., 519 F. App'x 1, 3-4 (2d Cir. 2013).  In any event, the result would not differ here under either approach.

[20]   Accord, e.g., Charles v. City of N.Y., 13 Civ. 3547, 2014 WL 4384155 at *3 (S.D.N.Y. Sept. 4, 2014); Boutros v. JTC Painting & Decorating Corp., 12 Civ. 7576, 2014 WL 3925281 at *4 (S.D.N.Y. Aug. 8, 2014); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011) (Peck, M.J.); N.Y. City Dist. Council of Carpenters v. Rock-It Contracting, Inc., 09 Civ. 9479, 2010 WL 1140720 at *2 (S.D.N.Y. Mar. 26, 2010) (Peck, M.J.), R. & R. adopted, 2010 WL 1558568 (S.D.N.Y. Apr. 19, 2010); Cablevision Sys. N.Y.C. Corp. v. Torres, 02 Civ. 7602, 2003 WL 22078938 at *5 (S.D.N.Y. Sept. 9, 2003) (Peck, M.J.); Sowemimo v. D.A.O.R. Sec., Inc., 97 Civ. 1083, 2000 WL 890229 at *3 (S.D.N.Y. June 30, 2000), aff'd, 1 F. App'x 82 (2d Cir. 2001); Lavin-McEleney v. Marist Coll., 96 Civ. 4081, 1999 WL 33500070 at *3 (S.D.N.Y. Sep. 28, 1999), aff'd, 239 F.3d 476 (2d Cir. 2001); N.S.N. Int'l Indus. N.V. v. E. I. DuPont de Nemours & Co., 89 Civ. 1692, 1996 WL 154182 at *2 (S.D.N.Y. Apr. 3, 1996) (Peck, M.J.); see, e.g., Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983).

Hines claims that the rate is reasonable because three retainer agreements signed between March 2014 and June 2015 establish "that he was being compensated by paying clients at the time his firm was retained" at $450 per hour.  (Dkt. No. 76: Dixon Br. at 17.)  Hines further notes that he "is a founding partner of Held & Hines LLP (formed in March 2013), [and] was [formerly] a partner at Lazaowitz & Manganillo LLP for 3 years . . . ."  (Dixon Br. at 19.)  Hines has "over 12 years of litigation experience" and "has successfully litigated more than 40 civil rights cases in New York's federal and state courts."  (Id.)

In determining reasonable hourly rates, the Court must consider "the range of rates plaintiff's counsel actually charge their clients.  This is obviously strong evidence of what the market will bear."  Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008); see, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 186 n.3, 190 (2d Cir. 2008).[21]  "'Consistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time.'"  Makinen v. City of N.Y., 11 Civ. 7535, 2016 WL 1451543 at *3 (S.D.N.Y. Apr. 12, 2016).[22]  Attorneys with experience comparable to Hines have been awarded between $300 to $450 per hour.  See, e.g., Rosado v. City of N.Y., 11 Civ. 4285, 2012 WL 955510 at *5 (S.D.N.Y. Mar.15, 2012) (awarding $350 an hour for an attorney with "at least three years experience in the area of civil rights and nine

---

[21]   See also, e.g., Nunez v. Francis Deli Grocery, 13 Civ. 4894, 2015 WL 1963630 at *7 (S.D.N.Y. Apr. 30, 2015) (attorney's customary hourly rate among factors to be considered in determining lodestar, quoting Arbor Hill); Bazignan v. Team Castle Hill Corp., 13 Civ. 8382, 2015 WL 1000034 at *4 (S.D.N.Y. Mar. 5, 2015) (same); Magnuson v. Newman, 10 Civ. 6211, 2014 WL 3767006 at *1 (S.D.N.Y. July 31, 2014) (same).

[22]   Accord, e.g., Chen v. TYT E. Corp., 10 Civ. 5288, 2013 WL 1903735 at *2 (S.D.N.Y. May 8, 2013); DeCurtis v. Upward Bound Int'l, Inc., 09 Civ. 5378, 2011 WL 4549412 at *8 (S.D.N.Y. Sep 27, 2011).

years experience in general litigation"); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 514

(S.D.N.Y.2011) (Peck, M.J.) (approving partner's $450 hourly rate as "consistent with rates awarded

by the courts in other FLSA or similar statutory fee cases" (citing cases)); Tatum v. City of N.Y.,

06 Civ. 4290, 2010 WL 334975 at *5 (S.D.N.Y. Jan. 28, 2010) (awarding fees at hourly rates of

$400 and $450 for two attorneys with "'a combined total of 27 years'" of litigation experience); Wise

v. Kelly, 620 F. Supp. 2d 435, 443, 447 (S.D.N.Y.2008) (awarding $425 for a founding partner at

a private civil-rights firm with eighteen years of experience).

The Court finds that Hines' requested rate of $425 per hour is reasonable in light of

his experience litigating civil rights cases and consistent with the rates awarded in this District. See,

e.g., Makinen v. City of N.Y., 2016 WL 1451543 at *3 (calculating "the presumptively reasonable

fee based off the rates requested" in the absence of any challenge to the reasonableness of the billing

rates); Balu v. City of N.Y., 12 Civ. 1071, 2016 WL 884666 at *5 (S.D.N.Y. Mar. 8, 2016)

(explaining that "the [c]ourt will not adjust the rate sought" because the defendants "do not challenge

the reasonableness of the hourly rate [the plaintiff's attorney] seeks").

## 2.    Time Reasonably Expended

In determining whether the amount of hours billed is reasonable, "the court takes

account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" Bliven

v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434, 103

S. Ct. 1933, 1939-40 (1983)).[23/]   "In so doing, 'the district court does not play the role of an

---

[23/]    Accord, e.g., Sheet Metal Workers' Nat'l Pension Fund v. Coverex Corp. Risk Solutions, No.
09-CV-121, 2015 WL 3444896 at *12 (E.D.N.Y. May 28, 2015);  Abdell v. City of N.Y.,
05 Civ. 8453, 2015 WL 898974 at *2 (S.D.N.Y. Mar. 2, 2015); Deng v. 278 Gramercy Park
Grp. LLC, 12 Civ. 7803, 2014 WL 1016853 at *12 (S.D.N.Y. Mar. 14, 2014), R. & R.
adopted, 2014 WL 4996255 (S.D.N.Y. Oct. 7, 2014).

uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" <u>Bliven</u> v. <u>Hunt</u>, 579 F.3d at 213.[24/] "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" <u>Cesario</u> v. <u>BNI Constr., Inc.</u>, 07 Civ. 8545, 2008 WL 5210209 at *7 (S.D.N.Y. Dec. 15, 2008) (quoting <u>Grant</u> v. <u>Martinez</u>, 973 F.2d 96, 99 (2d Cir. 1992), <u>cert. denied</u>, 506 U.S. 1053, 113 S. Ct. 978 (1993)), <u>R. & R. adopted</u>, 2009 WL 424136 (S.D.N.Y. Feb. 19, 2009); <u>see</u>, <u>e.g.</u>, <u>Louis Vuitton Malletier S.A.</u> v. <u>LY USA, Inc.</u>, 676 F.3d 83, 111 (2d Cir. 2012) ("In assessing the reasonableness of attorney's fees, a court looks to the amount of time spent as reflected in contemporaneous time records, and then decides how much of that time was 'reasonably expended.' If the district court finds that some of the time was not reasonably necessary to the outcome of the litigation, it should reduce the time for which compensation is awarded accordingly." (citation omitted)).[25/]

Plaintiffs cannot recover for time spent by attorneys completing administrative tasks. <u>See</u>, <u>e.g.</u>, <u>Sheet Metal Workers' Nat'l Pension Fund</u> v. <u>Coverex Corp. Risk Solutions</u>, 2015 WL 344896 at *13; <u>DeMarco</u> v. <u>Ben Krupinksi Gen. Contractor, Inc.</u>, No. 12-CV-0573, 2014 WL 3696020 at *9 (E.D.N.Y. July 22, 2014); <u>Lane Crawford LLC</u> v. <u>Kelex Trading (CA) Inc.</u>, 12 Civ. 9190, 2013 WL 6481354 at *8 (S.D.N.Y. Dec. 3, 2013) (Peck, M.J.), <u>R. & R. adopted</u>, 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014); <u>E.S.</u> v. <u>Katonah-Lewisboro Sch. Dist.</u>, 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011) ("A court may make [across-the-board percentage] reductions when attorneys engage in less skilled work, like filing and other administrative tasks [such as] . . . faxing and

---

[24/]     <u>Accord</u>, <u>e.g.</u>, <u>Dominguez</u> v. <u>B S Supermarket, Inc.</u>, No. 13-CV-7247, 2015 WL 1439880 at *16 (E.D.N.Y. Mar. 27, 2015); <u>Abdell</u> v. <u>City of N.Y.</u>, 2015 WL 898974 at *2.

[25/]     <u>See also</u>, <u>e.g.</u>, <u>Dominguez</u> v. <u>B S Supermarket, Inc.</u>, 2015 WL 1439880 at *16; <u>Deng</u> v. <u>278 Gramercy Park Grp. LLC</u>, 2014 WL 1016853 at *12.

mailing documents, making copies, filing, scanning, preparing documents for electronic filing, electronic file management, binding documents, and Bates stamping."), aff'd, 487 F. App'x 619 (2d Cir. 2012).[26/]

Second, case law also makes clear that the Court may reduce the fees requested for billing entries that are vague and do not sufficiently demonstrate what counsel did. See, e.g., Sheet Metal Workers' Nat'l Pension Fund v. Coverex Corp. Risk Solutions, 2015 WL 344896 at *12; Lane Crawford LLC v. Kelex Trading (CA) Inc., 2013 WL 6481354 at *8; Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 2013 WL 174226 at *8, *10 & n.19; VFS Fin., Inc. v. Pioneer Aviation, LLC, 08 Civ. 7655, 2009 WL 2447751 at *5 (S.D.N.Y. Aug. 11, 2009) (Peck, M.J.) ("Having reviewed [plaintiff's] attorneys' time sheets, the Court believes that a number of [plaintiff's] attorneys' billing entries are overly vague or duplicative, and that a percentage fee reduction therefore is appropriate."); J.S. Nicol, Inc. v. Peking Handicraft, Inc., 03 Civ. 1548, 2008 WL 4613752 at *4 (S.D.N.Y. Oct. 17, 2008) (Peck, M.J.) ("A time entry is vague if it lacks sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed. Where

---

[26/]    See also, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 12 Civ. 5456, 2013 WL 174226 at *7 (S.D.N.Y. Jan. 17, 2013) (Peck, M.J.), R. & R. adopted, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013); Short v. Manhattan Apartments, Inc., 286 F.R.D. 248, 255 (S.D.N.Y. 2012); Ryan v. Allied Interstate, Inc., 882 F. Supp. 2d 628, 636 (S.D.N.Y. 2012) (Peck, M.J.); All-Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d 613, 629 (S.D.N.Y. 2011) (Berman, D.J. & Peck, M.J.) (reducing fees where entries "reflect work done at an attorney rate that could and should have been done by a paralegal or secretary"); Nat'l Audubon Soc'y, Inc. v. Sonopia Corp., 09 Civ. 0975, 2010 WL 3911261 at *5 (S.D.N.Y. Sept. 1, 2010) ("[A]dditional set-offs are necessary to account for the time spent on such less-skilled work [such as] . . . completion of the civil cover sheet, review of ECF procedures, and meeting with court clerks to discuss order to show cause and default judgment procedures."), R. & R. adopted, 2010 WL 5373900 (S.D.N.Y. Dec. 22, 2010); Tucker v. City of N.Y., 704 F. Supp. 2d 347, 356 (S.D.N.Y. 2010).

billing records are vague, a [percentage] reduction in fees is . . . appropriate." (citations, quotations & fn. omitted)).[27/]

        Third, a reduction is warranted where the hours billed are disproportionate to the quantity or quality of the attorneys' work.  See, e.g., Lane Crawford LLC v. Kelex Trading (CA) Inc., 2013 WL 6481354 at *9; Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 2013 WL 174226 at *8, *10; Harris v. Fairweather, 11 Civ. 2152, 2012 WL 3956801 at *8 (S.D.N.Y. Sept. 10, 2012) (Peck, M.J.) ("In determining the reasonableness of the requested attorneys' fees, the Court considers the quality of the work done by the attorneys. . . .  In light of the mediocre attorney performance, the vague billing entries and excessive time spent on certain tasks, the Court should reduce the total attorneys' fees . . . ." (citing cases)), R. & R. adopted, 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012); Rolex Watch, U.S.A., Inc. v. Pharel, No. 09 CV 4810, 2011 WL 1131401 at *7 (E.D.N.Y. Mar. 11, 2011) (reduction warranted where brief "did not contain particularly complicated analyses" and omitted certain arguments entirely), R. & R. adopted, 2011 WL 1130457 (E.D.N.Y. Mar. 28, 2011); Gesualdi v. Cirillo, No. 09-CV-4570, 2011 WL 666196 at *5 (E.D.N.Y. Jan. 3, 2011) (reduction

---

27/     See also, e.g., Prince of Peace Enter., Inc. v. Top Quality Food Mkt. LLC, 07 Civ. 349, 2014 WL 793084 at *7 (S.D.N.Y. Feb. 28, 2014), R. & R. adopted in relevant part, 2015 WL 456645 (S.D.N.Y. Feb. 3, 2015); Short v. Manhattan Apartments, Inc., 286 F.R.D. at 255 ("A court may reduce requested fees if the attorneys' documentation of their hours is vague . . . ."); Ryan v. Allied Interstate, Inc., 882 F. Supp. 2d at 636; Carrasco v. W. Vill. Ritz Corp., 11 Civ. 7843, 2012 WL 2814112 at *7 (S.D.N.Y. July 11, 2012) (Peck, M.J.) (reducing attorney's hours where "some of the billing entries are vague and the time spent excessive"), R. & R. adopted, 2012 WL 3822238 (S.D.N.Y. Sept. 4, 2012); Gordon v. Site 16/17 Dev., LLC, 11 Civ. 0427, 2011 WL 3251520 at *5 (S.D.N.Y. July 28, 2011) (Peck, M.J.) ("When time records reflect vague and duplicative entries, and entries for attorneys performing ministerial tasks, the Court may order a reduction in attorneys' fees." (citing cases)).

warranted where "the 26.1 total hours billed on this matter do not reflect the quality of work submitted to the Court"), R. & R. adopted, 2011 WL 666197 (E.D.N.Y. Feb. 14, 2011).[28]

Dixon seeks $56,364.08 in attorneys' fees. (Dkt. No. 75: Hines Aff. ¶ 4 & Ex. H.)[29] The Court has reviewed Dixon's counsel's time sheet and finds that some of Hines's time billed at $425 per hour should have been billed at lower associate or paralegal rates, some entries are vague or excessive, and, most importantly, a significant amount of time relates to the case against all defendants and not just to the litigation against Agbai.[30] See, e.g., Bumble & Bumble, LLC v. Pro's

---

[28]   See also, e.g., Dominguez v. B S Supermarket, Inc., 2015 WL 1439880 at *17 (10% reduction warranted where "the 80.4 hours spent by plaintiff's counsel on this case exceeds the amount of time that reasonably should have been spent"); Deng v. 278 Gramercy Park Grp. LLC, 2014 WL 1016853 at *20-21 (reduction warranted for, inter alia, disproportionate time spent on one plaintiff's claims although they were the same as the other plaintiff's claims, overstaffing, duplicative work, and failure to submit any documentation to support fees for time spent preparing "a memorandum that is remarkably devoid of law"); Truong v. N.Y. Hotel & Motel Trades Council, AFL-CIO, 07 Civ. 11383, 2011 WL 147689 at *3 (S.D.N.Y. Jan. 12, 2011) ("The Court is unclear as to why this document, presumptively a standard form order, took up 8.75 hours of an associate['s] time. Thus the Court reduces [counsel's] billables . . . ."); OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc., 09 Civ. 8665, 2010 WL 5538552 at *5 (S.D.N.Y. Dec. 6, 2010) (reduction warranted where "attorneys spent a total of 7.6 hours on the drafting of a cease-and-desist letter and related activities" and excessive time was spent drafting a "nearly identical" document that "appears to be boilerplate"), R. & R. adopted, 2011 WL 43459 (S.D.N.Y. Jan. 5, 2011); Microsoft Corp. v. Computer Care Ctr., Inc., No. 06-CV-1429, 2008 WL 4179653 at *16 (E.D.N.Y. Sept. 10, 2008) (reducing fees where attorney "spent an excessive amount of time [1.9 hours, or $950] composing a two-page letter to the Court requesting an extension of the discovery deadline").

[29]   This amount, however, is inclusive of costs (Hines Aff. Ex. H), even though Dixon separately seeks the same amount of costs in a separate portion of his brief (Dkt. No. 76: Dixon Br. at 20). The Court accordingly has subtracted any costs listed in Hines' billing records for purposes of calculating a reasonable attorneys' fees award.

[30]   For example, Hines performed, or otherwise billed at $425.00 per hour, the following tasks: 0.1 hours "[e]mail[ing] copy of filed S&C to SDNY clerk"; 0.3 hours "[f]il[ing] AOS re Corizon, Corizon Health, City, Ponte via ECF"; 0.3 hours "[m]ail[ing] authorizations to NYC Law Dept"; 0.1 hours "[f]il[ing] AOS for CO Philip"; 0.4 hours reviewing answers of other defendants; 3.5 hours "[r]eview[ing] City discovery in preparation for settlement
                                                                                    (continued...)

Choice Beauty Care, Inc., 14 Civ. 6911, 2016 WL 658310 at *9 (S.D.N.Y. Feb. 17, 2016) ("'Where there are multiple defendants, each defendant must bear the prevailing plaintiff's fees for time spent on matters clearly related to the claims made against that defendant.'"), R. & R. adopted, 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016); Laboratorios Rivas, SRL v. Ugly & Beauty, Inc., 11 Civ. 5980, 2013 WL 5977440 at *15 (S.D.N.Y. Nov. 12, 2013) (same), R. & R. adopted, 2014 WL 112397 (S.D.N.Y. Jan. 8, 2014); Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 12 Civ 5456, 2013 WL 174226 at *9 (S.D.N.Y. Jan. 17, 2013) (Peck, M.J.) (the defaulting defendant "is not responsible for fees related to [the plaintiff's] claims against other parties."), R. & R. adopted, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013); Colon v. City of N.Y., Nos. 09 CV 0008, 09 CV 0009, 2012 WL 691544 at *22 (E.D.N.Y. Feb. 9, 2012), R. & R. adopted, 2012 WL 686878 (E.D.N.Y. Mar. 2, 2012).  Hines' time sheet includes billing entries dating from his intake meeting with Dixon through the present, without any reduction for time spent on matters unrelated to the discrete June 16, 2012 incident involving Agbai.  Moreover, the settlement reached with the remaining defendants was inclusive of attorneys' fees, and therefore Hines has already been compensated for some aspects of the litigation applicable to the case as a whole.  (Dkt. No. 71: 1/25/16 Tr. at 2.)

    Based on the above considerations, the Court finds that a forty percent across-the-board reduction is appropriate, resulting in an award of $32,263.50 in attorneys' fees.  See, e.g.,

---

30/   (...continued)
   conference; 3.1 hours "[d]raft[ing] and efil[ing] new complaint civil cover sheet and statement of relatedness" in separate action; 0.7 hours "[d]raft[ing] and efil[ing] proposed summonses in Dixon v. Spiris"; 0.2 hours "[r]eview[ing] summons issued in Dixon v. Spiris"; 1.8 hours "[d]raft[ing] and fil[ing] opposition to def motion to adjourn settlement conference"; 3.5 hours for "[s]ettlement conference held - case settled as to all defendants except Agbai"; and 0.7 hour on various tasks related to settlement.  (Hines Aff. Ex. H: 2/5/15 Entry; 2/16/15 Entry; 4/15/15 Entry; 6/10/15 Entry; 8/18/15 Entry; 8/20/15 Entry; 12/16/15 Entry; 12/17/15 Entry; 12/18/15 Entry; 12/22/15 Entry; 1/19/16 Entry; 1/25/16 Entry; 2/4/16 Entry.)

Herrara v. 12 Water St. Gourmet Café, 13 Civ. 4370, 2016 WL 1274944 at *13 (S.D.N.Y. Feb. 29, 2016) ("Given the relative simplicity of the underlying dispute and the brief period during which this dispute was ongoing, an across-the-board reduction of forty percent (40%) is fair and reasonable."), R. & R. adopted, 13 Civ. 4370, 2016 WL 1268266 (S.D.N.Y. Mar. 31, 2016); Guo v. Tommy's Sushi, Inc., 14 Civ. 3964, 2016 WL 452319 at *7 (S.D.N.Y. Feb. 5, 2016) (applying a forty-percent across-the-board reduction partly because the attorney billed at partner rate for "associate-and even paralegal-level work"); Sheet Metal Workers' Nat'l Pension Fund v. Coverex Corp. Risk Sols., No. 09-CV-0121, 2015 WL 3444896 at *14-15 (E.D.N.Y. May 28, 2015) (applying a 30% across-the-board reduction on attorneys' fees for vague and excessive billing and for performing clerical or administrative tasks); De La Paz v. Rubin & Rothman, LLC, 11 Civ. 9625, 2013 WL 6184425 at *4, 9 (S.D.N.Y. Nov. 25, 2013) (reducing attorneys' fees by 30% due to deficiencies found in counsels' billing entries); Quinn v. Nassau Cty. Police Dep't, 75 F. Supp. 2d 74, 78 (E.D.N.Y.1999) (reducing fees by 30% based on unnecessary and redundant billing entries).[31]

## VI.        COSTS

Costs are recoverable under § 1988.  Kuzma v. I.R.S., 821 F.2d 930, 933-34 (2d Cir. 1987) ("Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable

---

[31]     No further reduction is warranted given the success of this litigation against Agbai, which resulted in the sizeable damages award described above.  See, e.g., Kassim v. City of Schenectady, 415 F.3d 246, 255-56 (2d Cir. 2005) (court may reduce attorneys' fees when the plaintiff "achieved only partial or limited success."); see also, e.g., Farrar v. Hobby, 506 U.S. 103, 114, 113 S. Ct. 566, 574 (1992) ("Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'") (quoting Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S. Ct. 1933, 1941 (1983)).

routine office overhead, which must normally be absorbed within the attorney's hourly rate.").[32]

Costs must, however, be supported by appropriate documentation.  See, e.g., Andrade v. 168 First Ave. Rest., 14 Civ. 8268, 2016 WL 3141567 at *11 (S.D.N.Y. June 3, 2016) (Peck, M.J.); Anderson v. Cty. of Suffolk, 2016 WL 1444594 at *10 ("'[C]ourts either disallow or reduce the amount for expenses that are vague or unsupported by documentation.'"); Doe v. Darien Bd. of Educ., No. 11 CV 1581, 2015 WL 8770003 at *11 (D. Conn. Dec. 14, 2015) ("'[T]he fee applicant bears the burden of adequately documenting and itemizing the costs requested.'")

Dixon seeks $4,467.51 in costs, including $1,250.00 for photocopying and printing, $566.15 for legal research, $82.00 in parking charges and $478.50 for records requests.  (Dkt. No. 76: Dixon Br. at 20.)  The request is not supported by any documentation other than a chart labeled "Time Sheet and Expenses" (Dkt. No. 75: Hines Aff. Ex. H) and a list of expenditures (Dixon Br. at 20).  The Court takes judicial notice of the $400.00 filing fee; in the absence of any supporting documentation, however, no other costs are recoverable.[33]

## CONCLUSION

For the reasons discussed above, judgment should be entered in Dixon's favor against Agbai in the amount of $400,000 in compensatory and punitive damages, and $32,663.50 in attorneys' fees and costs.

---

[32]    See, e.g., Anderson v. Cty. of Suffolk, No. CV 09-1913, 2016 WL 1444594 at *9 (E.D.N.Y. Apr. 11, 2016); Greene v. City of N.Y., 12 Civ. 6427, 2013 WL 5797121 at *6-7 (S.D.N.Y. Oct. 25, 2013); IMS Health Inc. v. Sorrell, No. 07-CV-188, 2012 WL 2915845 at *8 (D. Vt. July 17, 2012) ("Under 42 U.S.C. § 1988, the term 'Attorney's fees' includes reasonable litigation expenses . . . .").

[33]    The Court does not recommend awarding Dixon the second $400.00 filing fee he requests, which appears to represent a second filing fee paid in a separate action.  (See Hines Aff. Ex. H: 12/17/15 Entry.)

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Analisa Torres, 500 Pearl Street, Room 2210, and to my chambers, 500 Pearl Street, Room 1370.  Any requests for an extension of time for filing objections must be directed to Judge Torres (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:          New York, New York
                July 8, 2016

                                        Respectfully submitted,

                                        _____
                                        **Andrew J. Peck**
                                        United States Magistrate Judge


Copies to:      All Counsel (ECF)
                Richard Agbai (mail)
                Judge Torres (ECF)